# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

_____

WILLIE BURGESS, JR.,

Petitioner,

v.

TERRY RAYBON,
Warden of William C. Holman
Correctional Facility,

Respondent.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:24-cv-01751-LCB

CAPITAL CASE

## PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ...................................................................................... 1

STANDARD UNDER 28 U.S.C. § 2254 ................................................... 2

ARGUMENT............................................................................................. 5

I. THE PROSECUTION STRUCK FEMALE PROSPECTIVE
JURORS ON THE BASIS OF GENDER IN VIOLATION OF THE
EQUAL PROTECTION CLAUSE. ............................................................ 5

    A. Mr. Burgess Fairly Presented his *J.E.B.* Claim to the State
Court. .................................................................................... 7

    B. The State Court's Decision on this Issue Was Unreasonable on
Both the Law and the Facts....................................................11

    C. Mr. Burgess Established a Prima Facie Case and Is Entitled to
Proceed to Steps Two and Three of the *J.E.B./Batson* Inquiry. ......... 24

II. TRIAL COUNSEL FOR MR. BURGESS WERE
CONSTITUTIONALLY INEFFECTIVE. ............................................... 26

    A. Mr. Burgess's Ineffectiveness Claims Are Not Procedurally
Barred................................................................................. 28

    B. This Court Must Presume the Factual Allegations in the Rule 32
Petition To Be True and Determine Whether the Summary
Dismissal Was Unreasonable. ............................................... 39

    C. The State Court's Rulings on Mr. Burgess's Ineffectiveness
Claims Were Unreasonable.................................................... 43

        1. The State Court's Ruling on Trial Counsel's
Ineffectiveness at the Guilt Phase Was Unreasonable................ 43

2.    Under a Constitutionally Proper Review, Mr. Burgess's Counsel Were Ineffective at the Guilt Phase. ............................ 49

3.    The State Court's Ruling on Trial Counsel's Ineffectiveness at the Penalty Phase Was Unreasonable. ........... 56

4.    Under a Constitutionally Proper Review, Mr. Burgess's Counsel Were Ineffective at the Penalty Phase. ......................... 70

III.  MR. BURGESS'S FEDERAL HABEAS CLAIMS ARE SUFFICIENTLY PLEADED ..................................................................... 75

IV.  JURORS WERE EXPOSED TO AND CONSIDERED EXTRINSIC EVIDENCE IN VIOLATION OF THEIR DUTY TO REACH A VERDICT BASED SOLELY ON THE EVIDENCE ADDUCED IN THE COURTROOM. .................................................................................. 78

V.  MR. BURGESS'S ATTORNEY GREGORY BIGGS'S ACTUAL CONFLICT OF INTEREST VIOLATED MR. BURGESS'S RIGHT TO COUNSEL AND RIGHT TO A FAIR TRIAL. .................................. 81

VI.  THIS COURT IS NOT REQUIRED TO ACCORD ANY DEFERENCE TO THE COURT OF CRIMINAL APPEALS. ................. 85

VII.  THE ALABAMA DEATH PENALTY STATUTE AND THE PROCEDURE RESULTING IN MR. BURGESS'S SENTENCE OF DEATH VIOLATE THE UNITED STATES CONSTITUTION. ............ 88

VIII. MR. BURGESS IS ENTITLED TO RELIEF ON ALL HIS CLAIMS. ............................................................................................... 89

CONCLUSION ................................................................................................ 90

CERTIFICATE OF SERVICE ................................................................................ 91

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Warden*,
 710 F.3d 1241 (11th Cir. 2013) .................................................................. 14

*Ake v. Oklahoma*,
 470 U.S. 68 (1985) ...................................................................................... 49

*Apprendi v. New Jersey*,
 530 U.S. 466 (2000) ..................................................................................... 88

*Barham v. United States*,
 724 F.2d 1529 (11th Cir. 1984) ................................................................... 84

*Barrow v. Toney*,
 2021 WL 4409086 (N.D. Ala. Sept. 27, 2021) ........................................... 37

*Batson v. Kentucky*,
 476 U.S. 79 (1986) ............................................................................... passim

*Borden v. Allen*,
 646 F.3d 785 (11th Cir. 2011) ......................................................... 39, 58, 75

*Brownlee v. Haley*,
 306 F.3d 1043 (11th Cir. 2002) ................................................................... 73

*Bui v. Haley*,
 321 F.3d 1304 (11th Cir. 2003) ............................................................... 3, 24

*Burgess v. State*,
 827 So. 2d 134 (Ala. Crim. App. 1998) ............................................... passim

*Burgess v. State*,
 413 So. 3d 30 (Ala. Crim. App. 2023) ................................................. passim

*Caldwell v. Mississippi*,
 472 U.S. 320 (1985) ..................................................................................... 88

*Castillo v. Estelle*,
 504 F.2d 1243 (5th Cir. 1974) ..................................................................... 83

*Chevron, USA., Inc. v. National Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ..................................................................... 86

*Cooper v. Sec'y, Dept. of Corr.*,
    646 F.3d 1328 (11th Cir. 2011) .............................................. 3, 42

*Cruz v. Arizona*,
    598 U.S. 17 (2023) ...................................................................... 38

*Cullen v. Pinholster*,
    563 U.S. 170 (2011) ...................................................................... 8

*Cuyler v. Sullivan*,
    446 U.S. 335 (1980) ............................................................... 83, 84

*Daniel v. Comm'r, Ala. Dept. of Corr.*,
    822 F.3d 1248 (11th Cir. 2016) ........................................... passim

*Daniel v. State*,
    86 So. 3d 405 (Ala. Crim. App. 2011) ....................................... 70

*Debruce v. Comm'r, Ala. Dept. of Corr.*,
    758 F.3d 1263 (11th Cir. 2014) ....................................... 42, 72, 73

*Douglas v. Alabama*,
    380 U.S. 415 (1965) .................................................................... 29

*Elmore v. Ozmint*,
    661 F.3d 783 (4th Cir. 2011) ...................................................... 50

*Ex parte Bohannon*,
    222 So. 3d 525 (Ala. 2016) ......................................................... 88

*Ex parte Borden*,
    60 So. 3d 940 (Ala. 2007) ....................................... 29, 31, 37, 38

*Ex parte Branch*,
    526 So. 2d 609 (Ala. 1987) ..................................... 18, 21, 22, 23

*Ex parte Trawick*,
    698 So. 2d 162 (Ala. 1997) ........................................................ 13

*Ferguson v. Comm'r, Ala. Dep't of Corr.*,
    69 F.4th 1243 (11th Cir. 2023) ..................................................................... 36

*Ferguson v. State*,
    13 So. 3d 418 (Ala. Crim. App. 2008) ................................................. 36, 38

*Ferrell v. Hall*,
    640 F.3d 1199 (11th Cir. 2011) ....................................................................... 2

*Flowers v. Mississippi*,
    588 U.S. 284 (2019) ............................................................ 12, 14, 15, 21

*Foster v. Chatman*,
    578 U.S. 488 (2016) ...................................................................................... 14

*Gaines v. Price*,
    No. 2:15-cv-1822-VEH-TMP, 2017 WL 2296962
    (N.D. Ala. May 2, 2017), *report and recommendation adopted*,
    No. 2:15-cv-1822-VEH-TMP, 2017 WL 2289105
    (N.D. Ala. May 25, 2017) ...................................................................... 32, 33

*Harris v. State*,
    947 So. 2d 1079 (Ala. Crim. App. 2004) ............................................. 28, 34

*Hart v. State*,
    852 So. 2d 839 (Ala. Crim. App. 2002) ...................................................... 32

*Hinton v. Alabama*,
    571 U.S. 263 (2014) .................................................... 28, 34, 35, 52

*Hittson v. GDCP Warden*,
    759 F.3d 1210 (11th Cir. 2014) ................................................................... 76

*Hyde v. State*,
    950 So. 2d 344 (Ala. Crim. App. 2006) ............................................... 28, 35

*In re Oliver*,
    333 U.S. 257 (1948) ...................................................................................... 48

*J.E.B. v. Alabama*,
    511 U.S. 127 (1994) ............................................................................ passim

*Johnson v. California,*
  545 U.S. 162 (2005) ................................................................. 11

*Johnson v. Sec'y, Dept. of Corr.,*
  643 F.3d 907 (11th Cir. 2011) .............................................. 2, 42

*Jones v. Walker,*
  540 F.3d 1277 (11th Cir. 2008) .................................................. 4

*Jones v. West,*
  555 F.3d 90 (2d Cir. 2009) ...................................................... 15

*Judd v. Haley,*
  250 F.3d 1308 (11th Cir. 2001) ........................................... 29, 30

*Kelley v. Sec'y for Dept. of Corr.,*
  377 F.3d 1317 (11th Cir. 2004) ............................................ 8, 10

*Kirksey v. Roberts,*
  613 So. 2d 352 (Ala. 1993) ...................................................... 37

*Lee v. Kemna,*
  534 U.S. 362 (2002) ...................................................... 29, 30, 38

*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 369 (2024) .............................................. 85, 86, 87, 88

*Madison v. Comm'r, Ala. Dept. of Corr.,*
  677 F.3d 1333 (11th Cir. 2012) ...................................... 7, 11, 26

*Marbury v. Madison,*
  5 U.S. 137 (1803) .................................................................... 87

*Marshall v. State,*
  182 So. 3d 573 (Ala. Crim. App. 2014) ................................ 32, 38

*Mashburn v. Comm'r, Ala. Dep't of Corr.,*
  80 F.4th 1292 (11th Cir. 2023) ................................................. 40

*McGahee v. Ala. Dept. of Corr.,*
  560 F.3d 1252 (11th Cir. 2009) .................................. 3, 4, 13, 25

*McNair v. Campbell*,
    416 F.3d 1291 (11th Cir. 2005) ..................................................... 8

*McWilliams v. Dunn*,
    582 U.S. 183 (2017) ...................................................................... 49

*Mickens v, Taylor*,
    535 U.S. 162 (2002) ...................................................................... 84

*Miller v. Comm'r, Ala. Dept. of Corr.*,
    826 Fed. Appx. 743 (11th Cir. 2020) ........................................... 89

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) ........................................................................ 3

*Miller-El v. Dretke*,
    545 U.S. 231 (2005) ............................................................... passim

*Pennsylvania v. Ritchie*,
    480 U.S. 39 (1987) ................................................................. 80, 81

*Picard v. Connor*,
    404 U.S. 270 (1971) ................................................................... 6, 8

*Pope v. Sec'y for Dep't of Corr.*,
    680 F.3d 1271 (11th Cir. 2012) ................................................... 41

*Porter v. McCollum*,
    558 U.S. 30 (2009) ...................................................................... 60

*Powell v. Allen*,
    602 F.3d 1263 (11th Cir. 2010) ................................................... 40

*Reed v. Quarterman*,
    555 F.3d 364 (5th Cir. 2009) ...................................................... 11

*Ring v. Arizona*,
    536 U.S. 584 (2002) ...................................................................... 88

*Roberts v. NASCO Equip. Co.*,
    986 So. 2d 379 (Ala. 2007) ......................................................... 37

*Rompilla v. Beard*,
    545 U.S. 374 (2005) ...................................................................... 2, 28, 59, 62

*Smith v. White*,
    815 F.2d 1401 (11th Cir. 1987) ................................................................. 84

*Sockwell v. Comm., Ala. Dept. of Corr.*,
    141 F.4th 1231 (11th Cir. 2025) ................................................. 15, 16, 17, 25

*Spencer v. Kemp*,
    781 F.2d 1458 (11th Cir. 1986) (en banc) ................................................. 29

*State v. Petric*,
    2020 WL 4726485 (Ala. Crim. App. 2020) ..................................... 28, 34, 35

*State v. White*,
    114 S.W.3d 469 (Tenn. 2003) .................................................................... 82

*Staub v. City of Baxley*,
    355 U.S. 313 (1958) ................................................................................... 30

*Strickland v. Washington*,
    466 U.S. 668 (1984) ............................................................................ passim

*Swain v. Alabama*,
    380 U.S. 202 (1965) .............................................................................. 23, 24

*Tanner v. United States*,
    483 U.S. 107 (1987) ................................................................................... 81

*Thomas v. State*,
    766 So. 2d 860 (Ala. Crim. App. 1998) ..................................................... 28

*Turner v. Louisiana*,
    379 U.S. 466 (1965) .............................................................................. 80, 81

*United States v. Hurn*,
    368 F.3d 1359 (11th Cir. 2004) ................................................................. 48

*Upshaw v. Singletary*,
    70 F.3d 576 (11th Cir. 1995) ..................................................................... 38

*Warger v. Shauers*,
    574 U.S. 40 (2014) ...................................................................... 81

*Washington v. Texas*,
    388 U.S. 14 (1967) ...................................................................... 48

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ............................................................. passim

*Williams v. Allen*,
    542 F.3d 1326 (11th Cir. 2008) ................................... 51, 71, 73

*Williams v. Taylor*,
    529 U.S. 362 (2000) ................................................................ 2, 60

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) .................................................................... 85

## Statutes

5 U.S.C. §§ 551–559 (Administrative Procedure Act) .................................... 86, 87

28 U.S.C. § 2241 .............................................................................................. 87

28 U.S.C. § 2254 ....................................................................................... passim

## Rules

Ala. R. App. P. 28(a)(10) .......................................................................... passim

Fed. R. Civ. P. 32.6(b) ................................................................................... 39

Fed. R. Governing § 2254 Cases, Rule 2(c). ........................................ 75, 76, 78

## Constitutional Provisions

U.S. Const. amend. V ................................................................................ passim

U.S. Const. amend. VI ............................................................................... passim

U.S. Const. amend. VIII ............................................................................ passim

U.S. Const. amend. XIV ...................................................................... passim

U.S. Const. art. III............................................................................. 86, 88

## Other Authorities

Tenn. Bd. Prof. Resp. Formal Ethics Op. 2002–F–146.......................................... 82

## INTRODUCTION

Willie Burgess, Jr. has sought for more than 20 years simply the opportunity to present evidence that his capital murder trial was unconstitutuonal.  The state courts did not give him that chance.  This Court should do so, lest a prisoner on Alabama's death row face execution without ever getting his day in court.

This is a death penalty case in which trial counsel admitted—on the record, repeatedly—that they were unprepared to defend their client at trial; failed to present readily-available evidence in support of their defense theory; and failed to investigate their client's documented history of unrelenting childhood trauma, including the fact that he was homeless for more than two years prior to his arrest at age 18.  In state post-conviction review, Mr. Burgess sought an opportunity to present evidence on the constitutional violations at his trial.  He was denied a hearing at every turn.

In this Court, Respondent argues that Mr. Burgess is not entitled to a hearing on any of his claims and that, with respect to some of his claims, this Court should not even review the merits of his arguments.

For the reasons set forth in his petition, which are expressly incorporated herein, as well as this Reply Brief, Mr. Burgess is entitled to an opportunity to prove his allegations.

## STANDARD UNDER 28 U.S.C. § 2254

To obtain habeas corpus relief, a petitioner in state custody must demonstrate that he meets the requirements of 28 U.S.C. § 2254. Those requirements include, for a claim adjudicated on the merits by a state court, that the state court's adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); *see Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

Under § 2254(d)(1), a state court decision does not warrant deference where the court "applies a rule that contradicts the governing law" or its "application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 405, 409 (2000). In some cases, a decision is objectively unreasonable because the result it reaches is unreasonable under the governing standard, regardless of the rationale supporting it. *See, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 389 (2005); *Johnson v. Sec'y, Dept. of Corr.*, 643 F.3d 907, 935 (11th Cir. 2011); *Ferrell v. Hall*, 640 F.3d 1199, 1233 (11th Cir. 2011). In other cases, a decision's analysis shows that the state court unreasonably applied the law. For example, some constitutional standards require a court to review "all relevant

circumstances" to determine whether a constitutional violation occurred.  *See, e.g.*, *Batson v. Kentucky*, 476 U.S. 79, 96 (1986).  As the Eleventh Circuit has explained, "where a legal standard requires a state court to review all of the relevant evidence to a claim, the state court's failure to do so is an unreasonable application of law." *McGahee v. Ala. Dept. of Corr.*, 560 F.3d 1252, 1262 (11th Cir. 2009).

Separately, a state court decision does not warrant deference under § 2254(d)(2) where it rests on an objectively unreasonable determination of the facts in light of the evidence in the record.  *See, e.g.*, *Miller-El v. Cockrell*, 537 U.S. 322, 340, 348 (2003) ("*Miller-El I*").  A state court's factual conclusion may be unreasonable because it is simply inconsistent with the record.  *See, e.g.*, *Miller-El v. Dretke*, 545 U.S. 231, 266 (2005) ("*Miller-El II*"); *Bui v. Haley*, 321 F.3d 1304, 1315–16 (11th Cir. 2003).  Additionally, distorted or exaggerated characterizations of the record can qualify as unreasonable determinations.  *See, e.g.*, *Cooper v. Sec'y, Dept. of Corr.*, 646 F.3d 1328, 1353 (11th Cir. 2011).

Finally, where the state courts declined to afford a habeas petitioner an evidentiary hearing on the grounds that the allegations failed to state a claim, this Court must assume those allegations are true.  *See Daniel v. Comm'r, Ala. Dept. of Corr.*, 822 F.3d 1248, 1261 (11th Cir. 2016).  If the federal court finds that it was unreasonable for the state court to conclude that the allegations, even taken as true, would not warrant relief, that conclusion is undeserving of deference, and this

Court must review the constitutional claims *de novo*. *See* § 2254(d); *McGahee*, 560 F.3d at 1266 (holding that the state court's decision was unreasonable and therefore was not entitled to deference); *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (same).

**ARGUMENT**

## I.   THE PROSECUTION STRUCK FEMALE PROSPECTIVE JURORS ON THE BASIS OF GENDER IN VIOLATION OF THE EQUAL PROTECTION CLAUSE.

In *J.E.B. v. Alabama*, 511 U.S. 127, 129 (1994), the U.S. Supreme Court recognized that "gender, like race, is an unconstitutional proxy for juror competence and impartiality," holding that the Fourteenth Amendment's Equal Protection Clause "forbids intentional discrimination on the basis of gender, just as it prohibits discrimination on the basis of race." *Id.*  A constitutional milestone, *J.E.B.* promised equal access to the jury box for citizens reporting for jury duty, irrespective of gender.  That promise was violated in Mr. Burgess's case.

Despite a qualified pool of jurors that was split almost exactly evenly between men and women, the State used 73% of its strikes against women and 27% against men.  (Doc. 21 at 6, 17–18.)  The State used seven of its first eight strikes on women and four of its last five strikes against women; struck multiple women who were similarly situated to at least one seated male juror; and struck women whose only common trait was their gender.  (Doc. 21 at 20–28.)  These and other circumstances that were apparent in the trial court record more than satisfy the low bar the U.S. Supreme Court has established as the defendant's burden at step one of a *Batson/J.E.B.* inquiry.  *See J.E.B.*, 511 U.S. at 129; *Batson*, 476 U.S. at 96–97.  The state court's cursory rejection of Mr. Burgess's *J.E.B.* claim was

contrary to and an unreasonable application of clearly established Supreme Court law as well as an unreasonable determination of the facts in light of the evidence in state court.  28 U.S.C. §§ 2254(d)(1) and (2); *see Burgess v. State*, 827 So. 2d 134, 150 (Ala. Crim. App. 1998).

Respondent spends fewer than three pages of its brief answering Mr. Burgess's *J.E.B.* claim, and virtually none of that defending the state court's ruling.  (Doc. 25 at 22–24.)  Respondent makes no serious attempt to rebut the evidence that raised an inference of discrimination and should have led the state courts to require gender-neutral explanations for the prosecution's strikes.  Instead, Respondent's argument here rises—and ultimately falls—on its claim that Mr. Burgess did not fairly present his *J.E.B.* claim to the state courts.  *See Picard v. Connor*, 404 U.S. 270, 275 (1971).  However, every one of the facts alleged in Mr. Burgess's federal petition was before the state court.  And once Respondent's procedural objection is overcome, he makes no argument to rebut Mr. Burgess's allegation that the state court ruling was unreasonable on the merits.

The question at the prima facie stage is not close.  Although the numerical evidence of discrimination is compelling, Mr. Burgess has never relied on "numbers alone" to raise an "inference" of gender discrimination.  (Doc. 25 at 23) (Respondent arguing that "numbers alone are insufficient to establish a prima facie case in jury selection").  In addition to the number of the prosecution's strikes

against women compared to those against men, Mr. Burgess presented to the state court evidence in the record demonstrating a discriminatory sequence of strikes, the stark differences in the way the State treated similarly situated struck female jurors and seated male jurors, and the heterogeneity of the struck female jurors. Those and other circumstances were more than sufficient to establish a prima facie case. The state court's one-paragraph opinion to the contrary was unreasonable.

Under the constitutionally mandated analysis of "all relevant circumstances" at step one, this Court should find that Mr. Burgess established a prima facie case under *J.E.B.* The Court then should hold a hearing to complete the three-step process. *See Madison v. Comm'r, Ala. Dept. of Corr.*, 677 F.3d 1333, 1339 (11th Cir. 2012).

### A. Mr. Burgess Fairly Presented his *J.E.B.* Claim to the State Court.

The Court can and should easily dispense with Respondent's exhaustion argument. Although Respondent acknowledges that the state court adjudicated Mr. Burgess's *J.E.B.* claim on the merits, (Doc. 25 at 23), he also asserts that "most of the facts Burgess relies on were not presented to the state courts on direct appeal." (Doc. 25 at 22.) Specifically, Respondent contends that the facts on which Mr. Burgess relies are "unexhausted and procedurally defaulted and are not properly before this Court for review." *Id.* However, Respondent is wrong on both the facts and the law. Mr. Burgess *did* present these facts in state court. Even

if that were not the case, the Supreme Court has squarely rejected the precise legal argument Respondent makes here, namely that facts that are already in the record must be presented identically in state and federal court to satisfy petitioner's exhaustion obligations. *See Miller-El II*, 545 U.S. at 241 n.2.

Under the AEDPA, a prisoner "must ordinarily exhaust state remedies before filing for habeas relief." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (citing 28 U.S.C. § 2254(b)).   A petitioner properly exhausts a claim if he has "fairly presented [it] to the state courts."   *Picard*, 404 U.S. at 275.  To determine whether a petitioner fairly presented a claim to the state courts, a federal court asks whether the state court "had a fair opportunity to consider" the federal claim.   *Id.* at 276.  A petitioner provides that opportunity so long as "the ultimate question for disposition [is] the same despite variations in the legal theory or factual allegations urged in its support."   *Id.* at 277 (internal citation omitted); *see also Miller-El II*, 545 U.S. at 241 n.2.  Federal courts "do not require a verbatim restatement of the claims brought in state court." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *see also Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (holding that habeas petitioners are not confined to "exact replicas" of the claims presented to state court).  Here, it cannot seriously be argued that Mr. Burgess failed to present his federal claim first to the state courts.

8

Respondents' Answer contends that "Burgess relies on facts that were not presented to the state courts on direct appeal." (Doc. 23 at 11.)  The Answer then lists specific allegations it claims Mr. Burgess did not make on direct appeal.  For example, Respondent claims Mr. Burgess did not allege the number of strikes or the prosecution's strike rate; side-by-side comparisons of struck female jurors and seated male jurors; heterogeneity of struck female jurors; or the manner of the prosecutor's voir dire.  (Doc. 23 at 11.)  Respondent's argument is puzzling at best and disingenous at worst, as Mr. Burgess alleged these facts in its CCA briefing. (*See, e.g*, Doc. 19-17 at 34–35) (alleging the number and sequence of the prosecutor's strikes of female veniremembers that established a prima facie case of discrimination); (Doc. 19-19 at 16–21) (alleging side-by-side comparisons of struck female jurors and seated male jurors; heterogeneity of struck female jurors; and the manner of the prosecutor's voir dire established a prima facie case of discrimination)).

That Mr. Burgess fairly presented these facts to the state court is apparent from the CCA's ruling, which noted that the court had "reviewed the record submitted on appeal." *Burgess*, 827 So. 2d at 150.  The state court then denied on the merits Mr. Burgess's arguments regarding the prosecutor's number of strikes; different treatment of female and male jurors; the manner of the prosecutor's voir dire; and the heterogeneity of the female jurors.  *See id*.  In other words,

Mr. Burgess argued, and the state court rejected, the allegations he now makes in federal court.  (Doc. 21 at 17–29.)

To be sure, Mr. Burgess's presentation of the claim in federal habeas is not a word-for-word recitation of the claim raised on direct appeal.  But he has not relied on anything other than the trial record that the state court explicitly reviewed, nor has he added new facts to his claim.  Instead, at most, Mr. Burgess has merely "clarif[ied] the arguments presented to the state courts on federal collateral review" while leaving the ultimate argument "unchanged in substance"—as he is permitted to do.  *Kelley*, 377 F.3d at 1344.

The Supreme Court explicitly rejected the position the State advances here in a *Batson* case in which the petitioner raised an entirely new argument for the first time in federal district court.  In *Miller-El II*, 545 U.S. at 253, the Court found a *Batson* violation after considering a comparative juror analysis, including disparate questioning of struck Black jurors and seated White jurors, that petitioner had not presented in state court.  Over a dissent, the Court, explaining its decision to consider all relevant circumstances of discrimination, stated:

> [T]he dissent conflates the difference between evidence that must be presented to the state courts to be considered by federal courts in habeas proceedings and theories about that evidence. . . .  There can be no question that the transcript of *voir dire*, recording the evidence on which Miller- El bases his arguments and on which we base our result, was before the state courts, nor does the dissent contend that Miller-El did not "fairly presen[t]" his *Batson* claim to the state courts.

10

*Id*. at 241 n.2 (internal citations omitted); *see also Reed v. Quarterman*, 555 F.3d 364, 372 (5th Cir. 2009) (noting that "[t]he majority soundly rejected" this argument).  Thus, even if Mr. Burgess had not litigated each indicia of discrimination in the state court, it would not matter because Mr. Burgess presented his *J.E.B.* claim, and these facts were in the record the state court reviewed.

> **B.     The State Court's Decision on this Issue Was Unreasonable on Both the Law and the Facts.**

The state court's decision that Mr. Burgess failed to satisfy step one of the *Batson* inquiry is contrary to and constitutes an unreasonable application of *J.E.B.*, and is based on an unreasonable determination of the facts in the state court record. As the Supreme Court has made clear, the burden for establishing a prima facie case is not a heavy one; the defendant must show simply that the relevant circumstances are sufficient to permit an inference of discrimination.  *See Batson*, 476 U.S. at 96 (framing the step one question as whether the "relevant circumstances raise an inference" of discriminatory intent); *see also Madison*, 677 F.3d at 1337 ("'[A] defendant satisfies the requirements of *Batson*'s first step by *producing* evidence sufficient to permit the trial court to draw an inference that discrimination has occurred.'" (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005) (emphasis added)).  A defendant may make out a prima facie case of discrimination based solely on facts gleaned from his trial, and the inference of

11

discrimination can be based on a single strike against one juror.  *See Batson*, 476

U.S. at 95–96; *J.E.B.*, 511 U.S. at 142 n.13.

In *Batson*, the Supreme Court provided examples of the types of evidence

that could support a prima facie case, such as "a 'pattern' of strikes against black

jurors included in the particular venire."  *Id.* at 97.  The Court emphasized that its

examples were "illustrative" and that "all relevant circumstances" must be

considered.  *Id.* at 96–97.  The Court recently affirmed that its "precedents allow

criminal defendants . . . to present a variety of evidence to support a [*Batson*]

claim."  *Flowers v. Mississippi*, 588 U.S. 284, 301–02 (2019).  Writing for the

majority in *Flowers*, Justice Kavanaugh listed "example[s]" of the evidence a

defendant "may present," concluding with "other relevant circumstances that bear

upon the issue of racial discrimination."  *Id*. at 302.

Here, the state court found that the only possible evidence of discrimination

in the record was the prosecutor's use of "many of his strikes to remove women."

*Burgess*, 827 So. 2d at 150.  The entirety of the state court's ruling was as follows:

> We do not find sufficient evidence that the female veniremembers who
> were struck shared only the characteristics of gender.  Nor do we find
> anything in the type and manner of the prosecutor's statements or
> questions during the extensive voir dire examination that indicated an
> intent to discriminate against female jurors.  We do not find a lack of
> meaningful voir dire directed at the female jurors or that female jurors
> and male jurors were treated differently.  There is no evidence that the
> prosecutor had a history of misusing peremptory challenges so as to
> discriminate against women.  We find only that the prosecutor used
> many of his strikes to remove women from the venire.  "Without more,

12

> we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination." *Ex parte Trawick*, 698 So. 2d 162, 168 (Ala. 1997).

*Id.* This ruling ignores the plain evidence in the record that more than meets the low standard to establish a prima facie case.

The state court's ruling does not explain the basis for its conclusion about the record and, as noted above, Respondent does not offer any additional defense of the state court's ruling on the merits. Respondent's *only* argument on the merits is that "numbers alone" are insufficient to establish a prima facie case, (Doc. 25 at 23), an assertion that reflects a misstatement of both the record and Mr. Burgess's claim. *See McGahee*, 560 F.3d at 1264–65 (holding that the state court engaged in an unreasonable application of *Batson* under § 2254(d)(1) because it failed to consider "all relevant circumstances"); *Miller-El II*, 545 U.S. at 240, 266 (holding that the state court's *Batson* analysis was based on an unreasonable determination of the facts under § 2254(d)(2) because it was inconsistent with the record). Mr. Burgess's step-one evidence more that suffices to establish an inference of discriminatory intent.

According to Respondent, "the only facts that are properly before this Court are that the State used eleven of its peremptory strikes to remove women from the jury, that the jury was comprised of eight men and four women, and that the venire from which the strikes were made consisted of twenty men and twenty-one

13

women." (Doc. 25 at 23.) As Mr. Burgess argued in the state court and alleged in the instant federal petition, the record before the state court and this Court contains far more than this.[1]

Five points warrant emphasis.

*First*, the State struck female prospective jurors disproportionately. As noted above, the Supreme Court in *Batson* explained that a pattern of strikes might give rise to an inference of discrimination. 476 U.S. at 97. Here, the prosecutor used 11 of its 15 peremptory challenges to strike 11 out of the 21 qualified women from Mr. Burgess's venire, which is a strike rate of 73%. (Doc. 19-1 at 195–96; Doc. 19-7 at 173–78.) The odds of the prosecution striking a female juror in selecting the twelve-person jury were 2.62 times those of a male juror.

---

[1] Respondent does not address the facts it concedes were properly before the state court, other than to assert that "numbers alone" are not enough to establish a prima facie case. (Doc. 25 at 23.) However, to the extent Respondent implicitly suggests that the number of women who served on the jury is relevant, the Court should reject this out of hand. The Supreme Court has never suggested that the presence of a Black citizen on the final jury negates a prima facie case in the *Batson* context. To the contrary, the Court has made clear that "even a single instance of race discrimination against a prospective juror is impermissible." *Flowers*, 588 U.S. at 300; *see also Foster v. Chatman*, 578 U.S. 488, 514 (2016) ("Two peremptory strikes on the basis of race are two more than the Constitution allows."). Consistent with that principle, the Eleventh Circuit has found that state prosecutors violated *Batson* by striking Black prospective jurors even though other Black prospective jurors were seated. *See*, *e.g.*, *Adkins v. Warden*, 710 F.3d 1241, 1244, 1258 (11th Cir. 2013) (granting *Batson* relief under § 2254 even though the prosecution did not strike two of the Black prospective jurors and one of them served on the jury).

Mr. Burgess was thus tried by a jury that was only 33% women, in contrast to the venire, which was 51.2% women.  (Doc. 19-17 at 34–35; Doc. 19-27 at 106) (counsel for Mr. Burgess in state court alleging the number, sequence, and impact of the prosecutor's strikes of female veniremembers).  In striking down to the twelve-person jury, the prosecutor excluded 52.4% of the female venire members, but only 20% of the male venire members.  (Doc. 19-27 at 106.)

Where the group in question comprises a minority of the venire, as it often does when discrimination against Black prospective jurors is at issue, the prosecution can exclude all or most members of the group by exercising a small percentage of its total number of strikes.  There, the exclusion of most or all of the group is more probative of the prosecution's intent than the percentage of strikes it used against Black veniremembers.  *See Flowers*, 588 U.S. at 300 (observing that "[b]ecause blacks are a minority in most jurisdictions, prosecutors often have more peremptory strikes than there are black prosecutive jurors on a particular panel"); *see also Jones v. West*, 555 F.3d 90, 98 (2d Cir. 2009) ("Cases involving successful challenges to exclusion rates have typically included patterns in which members of the racial group are completely or almost completely excluded from particulating on the jury.").  The Eleventh Circuit's recent decision granting *Batson* relief in *Sockwell v. Comm., Ala. Dept. of Corr.,* 141 F.4th 1231, 1247 (11th Cir. 2025), illustrates the point.  The venire consisted of ten Black prospective jurors (24%)

15

and 32 White jurors (76%).  *Id*. at 1244.  Using only eight of its 15 strikes against Black jurors, the State was able to remove 80% of the Black jurors.  *Id*.

The relative gender balance in jury venires may obscure, but does not negate, the constitutional harm of gender discrimination during the voir dire process.  In such cases, the prosecution's exclusion rate is almost always less probative of its intent than its strike rate.  Even where the prosecution exercises all its strikes against women venirepersons, it will never have enough strikes to remove all women or even the vast majority of women from the seated jury.  Here, the extent to which the prosecution *attempted* to reduce the number of women— using 73% of its strikes to exclude them—is more revealing of its discriminatory intent than the exclusion rate.

The CCA placed no weight on any of this evidence; instead, it referenced only the *number* of strikes of women—"the prosecutor used many of his strikes to remove women"—without even mentioning the *percentage* of those strikes relative to the strikes of male jurors.  *Burgess*, 827 So. 2d at 150.  Respondent repeats the state court's error; it claims that "numbers alone are insufficient to establish a prima facie case," without acknowledging either the strength of the numbers, the percentage of strikes of men compared to strikes of women, or the fact that Mr. Burgess relied on other evidence of discrimination beyond the numbers. (Doc. 25 at 23.)

16

*Second*, the sequence of the prosecutor's strikes against women in Mr. Burgess's venire supports the inference of discrimination. The timing of the prosecution's decision to strike or refrain from striking a juror may support an inference of purposeful discrimination. *See Miller-El II*, 545 U.S. at 250 (commenting on the prosecution's decision, toward the end of jury selection, when it had only a few strikes remaining, to allow one Black juror to be seated). As Mr. Burgess argued in state court, the prosecutor used "seven of his first eight" strikes to remove women from the venire. (Doc. 19-17 at 34; Doc. 19-19 at 19.) He used four of his last five strikes against women, reserving his fifteenth strike for a man the prosecutor knew would serve as the first alternate juror. (Doc. 21 at 21.) Striking this male juror posed no risk to the prosecutor's intention of keeping as many women off the seated jury as possible. It also served to maintain or even increase the number of men on the seated jury in the event a seated juror had to be replaced with an alternate. (Doc. 19-1 at 195–96.)

*Third*, as Mr. Burgess argued in state court, "[t]he prosecutor treated men and women, who had the same characteristics, in a disparate manner." (Doc. 19-19 at 20.) The "side-by-side comparisons" of "[s]imilarly situated" women whom the prosecutor struck and men who were seated on the jury supports a prima facie case. *Miller-El II*, 545 U.S. at 241; *see also Sockwell*, 141 F.4th at 1241 (citing *Flowers*, 588 U.S. at 302).

17

During the selection of Mr. Burgess's jury, the prosecutor struck several women, each of whom was similarly situated to at least one seated male juror. *Miller-El II*, 545 U.S. at 247 n.6 (explaining that jurors need not be "identical in all respects" to be "similarly situated" because "potential jurors are not products of a set of cookie cutters"). The seminal Alabama case on the implementation of *Batson* establishes "[d]isparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner" as "illustrative of the types of evidence that can be used to raise the inference of discrimination." *Ex parte Branch*, 526 So. 2d 609, 622–23 (Ala. 1987); *see also id.* at 623 (giving the example, in the context of race discrimination, of the prosecutor striking a "black elementary school teacher . . . as being potentially too liberal because of his job, but a white elementary school teacher was not challenged") (citation omitted).

In state court, Mr. Burgess compared several pairs of struck female jurors and seated male jurors and compared five of the struck women with all the seated men, demonstrating the similarity of their backgrounds and answers to the questions the parties asked each panel. (Doc. 19-19 at 20–21.) The federal petition contains a detailed analysis of the record that was before the state court. (Doc. 21 at 22–26.)

The disparate treatment of female prospective juror Sandra Kent and male prospective juror Barry Zeigler is just one example of the prosecution's gender-based peremptory challenges.  The only difference between them was that Ms. Kent was a woman and Mr. Zeigler was a man.  The two prospective jurors were similarly situated: Both were middle-aged.  (Doc. 19-1 at 196.)  Neither had a personal relationship with either defense attorney, (Doc. 19-5 at 201–02; Doc. 19-6 at 99), nor had either served on a jury.  (Doc. 19-5 at 202, Doc. 19-6 at 99–103.)  Neither worked in law enforcement, nor did their family members or close friends.  (Doc. 19-6 at 3–5, 104–06.)  Neither had been the victim of a crime, nor had their family members or close friends.  (Doc. 19-6 at 9–10, 106–11.)  Both had previously heard about the case, and both agreed that they could disregard what they had heard to decide the case based solely on the evidence presented at trial and the judge's instructions.  (Doc. 19-6 at 18–21, 51–52, 57–58, 70, 115–16, 119–20, 151–54.)

The two prospective jurors also responded similarly in ways that were reasonably likely to favor the prosecution.  For example, Ms. Kent and Mr. Zeigler both agreed they would require the defense to prove Mr. Burgess insane at the time of the offense.  (Doc. 19-6 at 25–26, 122–23.)  Neither indicated any personal or religious objections to capital punishment.  (Doc. 19-6 at 33–34, 124, 170.)  Both viewed the death penalty as a deterrent.  (Doc. 19-6 at 77, 172.)  Both could

impose the death penalty for murder during a robbery despite Mr. Burgess's youth. (Doc. 19-6 at 36–37, 128-29.)  Both would be able to personally announce their death recommendation to the judge.  (Doc 19-6 at 39–40, 134.)  Yet despite their similarities, the prosecution struck Ms. Kent, (Doc. 19-1 at 195–96), and allowed Mr. Zeigler to serve on the jury.  (Doc. 19-1 at 195–96.)

Notwithstanding the detailed comparisons in the record of these and other prospective jurors, the CCA simply concluded without analysis that it did not find that "female jurors and male jurors were treated differently."  *Burgess*, 827 So. 2d at 150.  Neither the state court nor Respondent explains how that conclusion could be reached in light of the clear evidence of gender discrimination in the record. Here, the disparate treatment of seated men and struck women was apparent even without hearing the prosecutor's attempt to provide gender-neutral explanations for the strikes.

*Fourth*, the heterogeneity of the eleven women whom the prosecutor struck from Mr. Burgess's venire contributes to the prima facie case.  As Mr. Burgess argued in state court, "the only characteristic shared" by struck female jurors was their gender.  (Doc. 19-19 at 19.)  The struck prospective female jurors ranged in age, lived in different parts of the county, had varying experiences with the criminal justice system, and held differing views on the death penalty.  (Doc. 19-19 at 18–19; *see also* Doc. 21 at 26–28.)

20

Heterogeneity of the jurors in question is also on the Alabama Supreme

Court's list in *Ex parte Branch* of the types of evidence that can raise an inference

of discrimination.  *See Ex parte Branch*, 526 So. 2d at 622 (listing as illustrative

"[e]vidence that the 'jurors in question share[d] only this one characteristic—their

membership in the group—and that in all other respects they [were] as

heterogeneous as the community as a whole'") (citation omitted)); *see Burgess*,

827 So. 2d at 150 (citing *Ex parte Branch*, 526 So. 2d at 623).[2]  Applying the

heterogeneity factor, the state court in Mr. Burgess's case did "not find sufficient

evidence that the female veniremembers who were struck shared only the

characteristics of gender." *Burgess*, 827 So. 2d at 150.  Although the state court

relied on this criterion, it offered no explanation for reaching a conclusion that is

directly at odds with the state court record, and Respondent does not mention this

factor at all.

*Fifth***,** the prosecutor's manner of conducting voir dire supports the prima

facie case.  In *Ex parte Branch,* the Alabama Supreme Court identified "[t]he type

and manner of the state's attorney's questions and statements during voir dire,

including nothing more than desultory voir dire" as yet another criteria courts

---

[2] The list in *Ex parte Branch* is in line with Supreme Court precedents from *Batson,* 476 U.S. at 96–97, to *Flowers*, 588 U.S. at 314–15 (holding that a court "must examine the whole picture," which is to say, "all the facts and circumstances").

could consider at step one.  *Ex parte Branch*, 526 So. 2d at 622–23.  As pleaded in the petition, (Doc. 21 at 27–28), the state court record establishes that the prosecutor's manner of questioning made the voir dire a pro forma exercise.  Prior to Mr. Burgess's trial, the prosecutor successfully opposed defense counsel's request for individual sequestered voir dire.  His voir dire then consisted of posing questions to each panel as a whole and engaging with individuals only after one or more potential jurors raised a hand.  This manner of questioning put the onus on each juror to reveal a personal detail or signal that he or she might not be able to follow the law.  The prosecutor asked, for example, "Are there any of you who have personal or religious objections to the death penalty?"  He asked, "Are there any of you who . . . feel that [capital punishment is] too serious a penalty for a murder during the course of a robbery?"  He also asked, "Are there any of you who feel like . . . the death penalty . . . [is] too harsh for somebody who is eighteen, twenty years old?"  Only one-third of the prosecutor's questions elicited a response by one or more of the prospective jurors.  (Doc. 21 at 27–28) (citing state court record).  The record indicates that the prosecutor was not interested in information that might provide lawful grounds for exercising peremptory strikes; his intention was to exclude as many women as possible from the seated jury.  The prosecutor's manner of voir dire further supports the inference that he based his strikes on gender.

22

Here, the court merely concluded, without analysis, that it did not "find anything in the type and manner of the prosecutor's statements or questions during the extensive voir dire examination that indicated an intent to discriminate against female jurors." *Burgess*, 827 So. 2d at 150.  Respondent does not address this factor at all.  *See Ex parte Branch*, 526 So. 2d at 622.  Although it purported to apply this factor, as with the other factors it considered, the state court did not explain how it reached a conclusion that is inconsistent both with Mr. Burgess's allegations and the record it reviewed.

Finally, the state court faulted Mr. Burgess for not presenting evidence that "the prosecutor had a history of misusing peremptory challenges so as to discriminate against women." *Burgess*, 827 So. 2d at 150.  That contention is incompatible with *Batson*, which established that a defendant need not demonstrate a history of discrimination.  *Swain v. Alabama*, 380 U.S. 202 (1965), which governed peremptory strikes before *Batson*, required a defendant to show that the State was striking Black jurors "in case after case, whatever the circumstances." *Id.* at 223.  That requirement ended with *Batson*, which held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial."  476 U.S. at 96: *see Miller-El II*, 545 U.S. at 239 (reaffirming the rule and quoting *Batson*, 476 at 94, 96).  It is thus

23

impermissible for a court to *require* a defendant to present historical evidence to

meet step one under *Batson*.[3]  Yet the state court based its ruling in part on the fact

that Mr. Burgess had not done so.  *Burgess*, 827 So. 2d at 150.

This is not only a case in which the state court failed to consider the relevant

circumstances.  It is also a case in which the state court explicitly reviewed the

state court record, considered some of the appropriate factors, and came to an

unreasonable conclusion in light of the relevant law and facts.  Under both

§§ 2254(d)(1) and (d)(2), the state court's decision warrants no deference.  *See*

*Miller-El II*, 545 U.S. at 266; *Bui*, 321 F.3d at 1315–16.

### C.    Mr. Burgess Established a Prima Facie Case and Is Entitled to Proceed to Steps Two and Three of the *J.E.B./Batson* Inquiry.

Because the state court's decision on the *J.E.B.* issue is not entitled to

deference under § 2254(d), this Court should conduct a de novo review of the

issue, find that Mr. Burgess established a prima facie case, and conduct a hearing

---

[3] Miller-El was tried during the *Swain* era.  *Miller-El II*, 545 U.S. at 236.  Of necessity, he presented evidence in the trial court that the Dallas County District Attorney's Office had "a systematic policy of excluding African Americans from juries."  *Id.* at 264.  At the same time as *Miller-El II* reaffirmed *Batson*'s rejection of *Swain*'s "crippling burden of proof," the Court acknowledged *Batson*'s requirement that "a defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination" would, in some cases, include "broader patterns of practice," such as office-wide polices to exclude Black prospective jurors or the record of individual prosecutors who did so.  *Id.* at 239–41 (quoting *Batson*, 476 U.S. at 96–97), 253.  The Court's manifest intention was to acknowledge that a court may "look[] beyond the case at hand" without mandating which type of evidence a defendant must present to prevail.  *Id.* at 240.

24

to complete the *J.E.B./Batson* inquiry. As the Eleventh Circuit has explained, "Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a *de novo* review of the record." *McGahee*, 560 F.3d at 1266; *see also*, *e.g.*, *Sockwell,* 141 F.4th at 1246 (same).

Mr. Burgess plainly established a prima facie case. He was required to show only that the circumstances were sufficient to "raise an inference" of discrimination. *Batson*, 476 U.S. at 96. He made that showing. The prosecution in this case used 73% of its strikes against women and 27% against men, which was clearly "a 'pattern' of strikes." *Id*. at 97. Moreover, the sequence of the prosecution's strikes reveals its deliberate effort to remove as many women from the jury as quickly as possible and to utilize strikes against women when they were most likely to be seated on the twelve-person jury. The record reflects the prosecutor's starkly different treatment of similarly situated male and female prospective jurors; heterogeneity of struck female jurors so that their only shared characteristic was gender; and a manner of questioning in voir dire that supports an inference of discrimination. Respondent does not rebut *any* of this evidence.

When a federal habeas court determines in a § 2254 analysis that the petitioner established a prima facie case under *Batson* or *J.E.B.*, the proper course is for the court to hold an evidentiary hearing and complete the process. In

*Madison*, the Eleventh Circuit held that the state court unreasonably failed to recognize the defendant's prima facie showing, and it remanded the case to the district court for steps two and three. *Madison*, 677 F.3d at 1339; *see also id.* ("[W]e reverse the district court's order and remand the case for the district court to complete the final two steps of the *Batson* proceedings.").

Here, as in *Madison*, this Court should find that (1) the state court's decision at step one was unreasonable; (2) the evidence was sufficient to raise an inference of discrimination; and (3) a hearing is required to complete the *J.E.B./Batson* inquiry. Mr. Burgess respectfully submits that if a hearing were granted, he would then demonstrate that the prosecution's strikes of female prospective jurors violated *Batson*, *J.E.B.*, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and therefore his conviction and sentence should be vacated.

## II.  TRIAL COUNSEL FOR MR. BURGESS WERE CONSTITUTIONALLY INEFFECTIVE.

Mr. Burgess's trial attorneys were ineffective with respect to both the guilt phase and the penalty phase. In state post-conviction proceedings, Mr. Burgess alleged his counsel's ineffectiveness in extensive, detailed petitions filed over the course of almost two decades. He repeatedly sought both discovery and the right to present evidence in support of his detailed allegations. (Doc. 21 at 12–15.) As the Court of Criminal Appeals later acknowledged, the circuit court went years

26

without taking action in the case. *See Burgess v. State*, 413 So. 3d 30, 45 (Ala. Crim. App. 2023) ("In August 2008, Burgess moved for leave to file an amended petition. . . . The circuit court did not rule on this motion and took no action in the case for more than eight years."). Finally, after retiring from the bench, the circuit court judge summarily denied relief. (Doc. 21 at 15.) On appeal, the Court of Criminal Appeals affirmed the circuit court on the merits, agreeing that the summary dismissal of Mr. Burgess's claims was appropriate. *See, e.g., Burgess*, 413 So. 3d at 53.

To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) his counsel performed deficiently, and (2) their deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Here, Mr. Burgess's counsel performed deficiently at every stage of the trial, and their deficient performance resulted in prejudice.

In this Reply, Mr. Burgess first addresses Respondent's argument that this Court should not even reach the merits of some of his ineffectiveness claims. He then explains why the state court's conclusion—that, even if Mr. Burgess proved all his allegations true at a hearing he is not entitled to relief—is unreasonable. Accordingly, this Court should allow Mr. Burgess to present evidence at an evidentiary hearing in support of each allegation of ineffective assistance of counsel.

### A.  Mr. Burgess's Ineffectiveness Claims Are Not Procedurally Barred.

Mr. Burgess's guilt-phase ineffectiveness claims center on his counsel's failure to investigate and present available expert testimony that would have directly supported counsel's defense theory that the shooting was unintentional. Mr. Burgess pleaded these claims in great detail throughout the state court proceedings, and repeatedly requested an evidentiary hearing on them, in the circuit court and the Alabama appellate courts.  Now, though, Respondent argues that this Court should not even reach the merits of these claims because, according to Respondent, he did not include enough case law or record citations in his appellate state court briefing.  (Doc. 25 at 18–19.)

This is not a close question.  Mr. Burgess raised these issues clearly and directly, in appellate argument that spanned multiple pages and included citations to eight distinct state and federal cases with pin cites,[4] as well as forty-nine citations to the record.[5]  (Doc. 19-37 at 41–47.)  The State understood

---

[4] Mr. Burgess cited to eight distinct cases: *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984); *Thomas v. State*, 766 So. 2d 860, 893 (Ala. Crim. App. 1998); *Hinton v. Alabama*, 571 U.S. 263, 274 (2014); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *State v. Petric*, 2020 WL 4726485, at *8 (Ala. Crim. App. 2020); *Harris v. State*, 947 So. 2d 1079, 1119 (Ala. Crim. App. 2004); *Rompilla v. Beard*, 545 U.S. 374, 387 n.7 (2005); and *Hyde v. State*, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).  (Doc. 19-37 at 42–45.)

[5] Mr. Burgess's citations to the record appeared at Doc. 19-37 at 42 (C. 745); *id.* at 43 (C. 745–56,1357, 751, 756–59; 744); *id.* at 44 (C. 747–51, 754, 794–96, 799–800, 802–03, 856, 874–75, 986–89, 990, 1354, 1398, 744, 747–51, 754, 794–96,

Mr. Burgess's argument and responded on the merits in its own briefing, (Doc. 19-38 at 48), and the Court of Criminal Appeals likewise had no problem addressing the arguments on the merits. *See, e.g., Burgess*, 413 So. 3d at 53. This Court should reject outright any assertion that Mr. Burgess's appellate briefing failed to sufficiently "apprise the [court] of [his] contentions." *Ex parte Borden*, 60 So. 3d 940, 944 (Ala. 2007).

A state procedural ruling serves as a bar to federal review under the adequate and independent state ground doctrine only if "the state procedural rule [is] adequate," meaning that it is not applied in an "arbitrary" fashion and is not "manifestly unfair." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *see also Spencer v. Kemp*, 781 F.2d 1458, 1470–71 (11th Cir. 1986) (en banc) ("It is a dominant theme of the Supreme Court case law . . . that a federal habeas petitioner shall not be denied federal review of a federal constitutional claim on the basis of an asserted state procedural ground that is manifestly unfair in its treatment of that claim."). Whether a state court procedural ruling is adequate to preclude federal review is "'itself a federal question.'" *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).

---

799–800, 802, 856); *id.* at 45 (C. 743, 758, 1359–60, 759–61, 761–65, 766–71, 771–72, 773–75, 777–80, 783–88); *id.* at 46 (C. 759–61, 762, 766–71, 771–72, 773–75, 775–83, 783–91, 746, 754); *id.* at 47 (C. 756–57, 762, 781–83, 759–91, 792–94).

The Court should reject Respondent's attempt to evade merits review of Mr. Burgess's ineffectiveness claims. Here, the state court's application of a state procedural rule to deny certain ineffectiveness claims was manifestly unfair. *See Judd*, 250 F.3d at 1313. Mr. Burgess complied with the state procedural rule at issue; invocation of it to preclude review would amount to an "arid ritual of meaningless form" that Supreme Court precedent prohibits. *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958).

Under *Lee v. Kemna*, federal courts may review a claim so long as a petitioner has substantially complied with an adequate state rule such that "the purpose of the Rules was served." 534 U.S. at 364. Even though state procedural rules serve legitimate state interests, the Supreme Court has held that federal review cannot rest on "a formal 'ritual.'" *Id.* at 366, 386 (cleaned up). Thus, federal review is proper when petitioners "substantially, if imperfectly," satisfy a state rule's essential requirements. *Id.* at 366, 378. Here, Mr. Burgess fully complied with the state court rule at issue, and nothing about his brief on appeal prevented the state court from reviewing the merits of Mr. Burgess's claims. Even if his brief was "imperfect," which it was not, it was clearly sufficient to satisfy the purpose of the state rule.

Respondent argues that the CCA's invocation of Alabama Rule of Appellate Procedure 28(a)(10) precludes merits review of certain, specific ineffectiveness

claims.  (Doc. 25 at 18–19.)  Rule 28(a)(10) requires that a petitioner's argument "contain[] the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on."  Ala. R. App. P. 28(a)(10). Respondent argues that because the CCA ruled that, with respect to a handful of claims, Mr. Burgess had not sufficiently briefed the argument, those claims are procedurally defaulted.  (Doc. 23 at 15–16.)

Mr. Burgess fully complied with Rule 28(a)(10).  In *Ex parte Borden*, the Alabama Supreme Court held that denial of an appellate argument for failure to comply with Rule 28(a)(10) is "limited to those cases where there is no argument presented in the brief and there are few, if any, citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions."  60 So. 3d at 944.  The court explained that the purpose of Rule 28(a)(10) is to "conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make."  *Id.* at 943.  The court held that the brief in that case, despite the CCA's invocation of Rule 28(a)(10), had sufficiently "apprise[d] the [court] of [his] contentions" even if "another attorney may have treated the . . . argument differently."  *Id.* at 944.

Consistent with *Ex parte Borden*, Alabama courts have generally held that to satisfy Rule 28(a)(10), a petitioner's argument must cite the case record and the

legal authorities, and explain how the authorities apply. *See, e.g., Marshall v. State*, 182 So. 3d 573, 623 (Ala. Crim. App. 2014) (holding that appellant failed to satisfy Rule 28(a)(10) where he "cite[d] no authority supporting his claims"); *Hart v. State*, 852 So. 2d 839, 848 (Ala. Crim. App. 2002) (holding appellant violated Rule 28(a)(10) where he failed to "include any citations to the record").

However, where an appellate brief sufficiently includes record and caselaw citations that allow the court to review the merits of the claim, invocation of the state procedural rule cannot bar federal review under § 2254(d). For example, in *Gaines v. Price*, the federal district court reached the merits of petitioner's ineffective assistance of counsel claim even where the CCA had dismissed the claim for failure to comply with Rule 28(a)(10). *See Gaines v. Price*, No. 2:15-cv-1822-VEH-TMP, 2017 WL 2296962, at *21 (N.D. Ala. May 2, 2017), *report and recommendation adopted*, No. 2:15-cv-1822-VEH-TMP, 2017 WL 2289105 (N.D. Ala. May 25, 2017). In *Gaines*, the court held:

> Although petitioner's counsel in this case did not present the most comprehensive or eloquent argument relating to trial counsel's conduct surrounding the admission of the videotape, the brief he submitted sufficiently supplied facts and authority that would have allowed the appellate court to address the issue on the merits. Accordingly, the application of the procedural bar to the claim relating to trial counsel's handling of the admissibility of the videotape, as a matter of federal law, was manifestly unfair, arbitrary, and exorbitant, and the issue is not precluded from review in this federal *habeas* action.

*Id.* The court then reviewed the merits of the claim under § 2254(d) because the state court had made an alternative merits determination. *See id.* at *22.

Likewise, Mr. Burgess's *Strickland* claim has been preserved for federal review because his appellate briefing complied with Rule 28(a)(10). With respect to counsel's deficient performance, for example, Mr. Burgess argued that he had specifically pleaded trial counsel's deficient performance based on the unreasonable failure to investigate the crime and present evidence in support of their theory at trial, which was that the shooting was unintentional. (Doc. 19-37 at 42.) In support of that argument, Mr. Burgess cited to relevant case law and the record from the circuit court proceedings:

> As detailed above, from the day he was arrested, Mr. Burgess maintained the same, consistent account of the crime: the shooting was unintentional. C. 745. As he pleaded in detail, although counsel ostensibly pursued this defense theory at trial, they failed to investigate the State's evidence, failed to obtain the discovery to which they were entitled, conducted no independent investigation, and neither consulted nor retained any experts to evaluate the State's forensic evidence. C. 745–56.

> The circuit court ruled, "It is beyond dispute that [counsel] pursued the unintentional/accidental death strategy during the trial." C. 1357. But this is precisely the point of Mr. Burgess's claim. The fact that trial counsel were "on notice" about his unintentional-shooting defense, but failed to investigate it, left the State's case undisputed, and rendered trial counsel's performance unreasonable. C. 751, 756–59.

> The Supreme Court has held that an inadequate investigation is a hallmark of deficient performance in capital defense practice, highlighting counsel's "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

33

unnecessary." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (quoting *Strickland*, 466 U.S. at 690–91).

This Court recently reiterated its holding that failure to conduct a necessary investigation constitutes deficient performance in a capital case. *State v. Petric*, 2020 WL 4726485, at *8 (Ala. Crim. App. Aug. 14, 2020). Although courts defer to counsel's reasonable strategic decisions, "a strategic decision that is based on an incomplete investigation may not be strategic or reasonable." *Harris v. State*, 947 So. 2d 1079, 1119 (Ala. Crim. App. 2004), *overruled on other grounds by Ex parte Jenkins*, 972 So. 2d 159 (Ala. 2005).

Mr. Burgess's detailed allegations of his trial counsel's failure to investigate the crime and to present evidence in support of the unintentional-shooting defense warranted a hearing.

(Doc. 19-37 at 42–44) (footnote omitted).

With respect to prejudice, Mr. Burgess argued that he had specifically pleaded how counsel's deficient performance prejudiced him, contrary to the circuit court's holding that he had failed to allege what trial counsel should have done. (Doc. 19-37 at 45.) Again, he did so by citing to relevant case law and the record from the proceedings below:

The petition also sufficiently pleaded that but for counsel's deficient performance, there is a reasonable likelihood the result of the trial would have been different. C. 743. In particular, Mr. Burgess alleged that an adequate investigation of the crime, including consultation with qualified expert witnesses who were readily available in 1993–94, would have allowed defense counsel to present evidence, both directly and through cross-examination, in support of the defense that the killing was unintentional. C. 758.

In denying Mr. Burgess's claim, the court stated that he "fails to plead facts that specifically describe what corroborating evidence his trial counsel should have found." C. 1359–60. The record plainly contradicts

this ruling. *See, e.g.*, C. 759–61, 761–65, 766–71, 771–72, 773–75, 777–80, 783–88. With respect to each allegation, Mr. Burgess "identif[ied] the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," *Strickland*, 466 U.S. at 690, and "plead[ed] specific facts indicating that he or she was prejudiced by the acts or omissions." *Hyde v. State*, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).

Word limitations prevent Mr. Burgess from addressing each allegation his petition makes with respect to prejudice. In summary, Mr. Burgess specifically alleged how he was prejudiced by trial counsel's failure to investigate the State's firearms evidence, C. 759–61; failure to investigate the autopsy findings, C. 762; failure to adequately investigate the crime scene, including failure to consult with an expert regarding the broken toilet, a key piece of the physical evidence, C. 766–71; failure to investigate the gunshot wound, C. 771–72; failure to consult with a lethal force expert, C. 773–75; failure to investigate and present evidence that the police department mishandled the firearms evidence and engaged in conduct that compromised its integrity, C. 775–83; and failure to investigate the police department's mishandling of the crime scene, C. 783–91.

These allegations, if proved, warrant relief under *Strickland* and entitle Mr. Burgess to an evidentiary hearing. Similar to the allegations this Court found to be sufficiently pleaded in *Petric*, Mr. Burgess alleged that trial counsel failed to investigate the crime and his theory of defense, C. 746, failed to present a single witness or introduce a single exhibit, C. 746, and did not effectively engage an investigator, C. 754; *see Petric*, 2020 WL 4726485 at *9, *13. As in *Petric*, counsel's unreasonable failure to investigate meant the jury heard a completely one-sided, "uncontested" account of the evidence. *See id.* at *23; C. 756–57. And as in *Hinton*, counsel's unreasonable failure to consult "competent" experts "maximized" "the threat . . . posed by the potential for incompetent or fraudulent prosecution forensics experts." 571 U.S. at 276. Here, with the exception of one question about fingerprints revealing counsel's failure to review the forensic reports, counsel failed to cross-examine the State's experts. C. 762, 781–83. Had they consulted "competent expert[s] to counter the testimony of the prosecution's expert witnesses," *Hinton*, 571 U.S. at 276, and presented the readily available evidence that Mr. Burgess detailed extensively in

his petition, *see* C. 759–91, 792–94, there is a reasonable probability
that the result of the guilt and penalty phases would have been different.

(Doc. 19-37 at 45–47).  Within the Court of Criminal Appeals's imposed word

limitation, Mr. Burgess's brief argued with specificity the relevant legal principles

and cited to the allegations he made in his petition that precisely provided the

detailed assertions the circuit court erroneously claimed were absent.  The

appellate court's rules require nothing more.

Respondent cites to one Eleventh Circuit case, *Ferguson v. Comm'r, Ala.

Dep't of Corr.*, 69 F.4th 1243 (11th Cir. 2023), that is entirely distinguishable.

(Doc. 25 at 19.)  In *Ferguson*, the court noted that the petitioner had, in the CCA,

"abandoned" his ineffective assistance of counsel claim related to insufficient

funding, when he made only a "conclusory statement without facts or argument."

*Id.* at 1259; *see also Ferguson v. State*, 13 So. 3d 418, 439 (Ala. Crim. App. 2008)

(noting that the appellate brief on the issue "does not set forth any facts or

argument").  Indeed, the entirety of appellant's presentation of the issue in his

opening brief was one sentence, unsupported by any citations to the record or

caselaw.  *See* Appellant's Initial Brief at 23, *Ferguson v. State*, 13 So. 3d at 439,

filed Feb 12, 2007, *available at* 2007 WL 7579790.  As described above,

Mr. Burgess's appellate brief was nothing like the one in *Ferguson*.  Mr. Burgess

did not abandon his ineffectiveness claims.  To the contrary, he articulated his

arguments and supported them with citations to the record and caselaw.

36

The Alabama Supreme Court has expressly decreed that "dismissal is not warranted despite noncompliance with Rule 28 when 'we are able to adequately discern the issue [the appellant] presents, in spite of his failure to present authorities in support of his claim.'" *Roberts v. NASCO Equip. Co.*, 986 So. 2d 379, 383 n.6 (Ala. 2007) (citing *Kirksey v. Roberts*, 613 So. 2d 352, 353 (Ala. 1993)). Indeed, Alabama "does not demand perfect compliance with Rule 28(a)(10), as it permits a court to review the merits of an issue upon discernment of its contours." *Barrow v. Toney*, 2021 WL 4409086, at *4 (N.D. Ala. Sept. 27, 2021).

Here, it is clear that, as Respondent concedes, (Doc. 25 at 28–29), the CCA reached the merits of the claims at issue. *See, e.g., Burgess*, 413 So. 3d at 53. Thus, his compliance was substantial enough to allow the state court to decide Mr. Burgess's argument on the merits, which supports a finding that his brief served the purpose of Rule 28(a)(10). *See, e.g., Burgess*, 413 So. 3d at 53 ("We have reviewed the allegations in this part of Burgess's petition (C. 745–94), and we conclude that summary dismissal of those claims was proper under Rule 32.7(d)."). Given that the purpose of Rule 28(a)(10) is to inform the court and opposing counsel of the appellant's contentions, *Ex parte Borden*, 60 So. 3d at 944, Mr. Burgess's pleadings had to comply with Rule 28(a)(10) for the state court to engage in a merits-based review of each argument.

37

Finally, the inconsistent application of the state procedural rule at issue confirms that the state court's ruling was arbitrary and "manifestly unfair" and therefore cannot serve as an adequate and independent state ground justifying denial of relief.[6] *See Upshaw v. Singletary*, 70 F.3d 576, 580 (11th Cir. 1995) (holding that the state court's ruling on a procedural ground was manifestly unfair because it was inconsistent with the way in which the procedural ground was usually applied); *see also Cruz v. Arizona*, 598 U.S. 17, 32 (2023) (holding that "where a state-court judgment rests on a novel and unforeseeable state-court procedural decision lacking fair or substantial support in prior state law, that decision is not adequate to preclude review of a federal question").

For all these reasons, this Court is not prohibited from reviewing each of Mr. Burgess's ineffective assistance claims, and indeed must do so as a matter of federal law. *See Lee*, 534 U.S. at 375. The Court should review the state court's merits determination under § 2254(d), presuming all Mr. Burgess's allegations to

---

[6] *Compare, e.g.*, *Ex parte Borden*, 60 So. 3d at 944 (holding that Rule 28(a)(10) is "limited to those cases where there is no argument presented in the brief and there are few, if any, citations to relevant legal authority"); *Marshall*, 182 So. 3d at 623 (holding that appellant failed to satisfy Rule 28(a)(10) where he "cite[d] no authority supporting his claims"); and *Ferguson v. State*, 13 So. 3d at 439 (noting that the appellate brief on the issue "does not set forth any facts or argument"), *with Burgess*, 413 So. 3d at 53 (applying Rule 28(a)(10) where appellant's brief included multiple case law precedents and citations to the record).

be true because he was not permitted to introduce evidence in support of any of them.

**B.    This Court Must Presume the Factual Allegations in the Rule 32 Petition To Be True and Determine Whether the Summary Dismissal Was Unreasonable.**

The state court did not afford Mr. Burgess an opportunity to present evidence in support of his ineffectiveness claims, instead holding that, even as pleaded, they did not amount to a colorable claim under the Sixth Amendment. (Doc. 19-30 at 126); *Burgess*, 413 So. 3d at 53, 58, 60.  Because that determination was unreasonable, this Court should conduct an evidentiary hearing and allow Mr. Burgess to present the evidence in support of his claims.

When evaluating a state court's dismissal of a *Strickland* claim for failure to comply with Rule 32.6(b)'s specificity requirements, the question for a federal court is "whether the [state court's] determination that [the] relevant ineffective assistance of counsel claims were due to be dismissed for failure to state a claim with sufficient specificity under Rule 32.6(b) was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"  *Borden v. Allen*, 646 F.3d 785, 817–18 (11th Cir. 2011); *see also Daniel*, 822 F.3d at 1261.

Because he has not yet had an opportunity to prove his claims at an evidentiary hearing, the Court must presume the truth of the factual allegations in Mr. Burgess's Rule 32 petition.  *See, e.g., Daniel*, 822 F.3d at 1261; *Powell v.*

*Allen*, 602 F.3d 1263, 1273 (11th Cir. 2010) (evaluating, where the state court had dismissed the Rule 32 petition for lack of specificity, "the allegations in Powell's Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel"); *Mashburn v. Comm'r, Ala. Dep't of Corr.*, 80 F.4th 1292, 1301 (11th Cir. 2023) (accepting Mashburn's allegations as true before analyzing whether those allegations were sufficient to state a Sixth Amendment claim).

*Daniel* is particularly instructive on this point. In that case, as here, the Alabama courts denied petitioner's ineffectiveness claims on the grounds that they were insufficiently pleaded and therefore failed to state a claim. 822 F.3d at 1260. The Eleventh Circuit explained that, in habeas proceedings, the federal court must answer two questions when the state court has summarily dismissed petitioner's ineffectiveness claims: first, whether the Rule 32 petition "pleaded enough specific facts that, if proven, amount to a valid penalty phase ineffective assistance of counsel claim" and second, if so, whether the CCA's "decision to the contrary was unreasonable under § 2254(d)." *Id.* at 1261. In conducting this evaluation, *Daniel* noted that the court must be mindful that a Rule 32 petitioner has no burden to prove his claims at the pleading stage and that, therefore, the facts alleged in the Rule 32 petition "are assumed to be true under Alabama law." *Id.*

*Daniel* provides a clear example of how to proceed when a federal court concludes that the state court's summary dismissal was unreasonable. There, the Eleventh Circuit found that the Rule 32 petition has "pleaded more than sufficient specific facts" to show ineffectiveness under both prongs of *Strickland*. *Daniel*, 822 F.3d at 1263, 1275. The court also found that the state court's ruling to the contrary was an unreasonable application of *Strickland* with respect to both deficient performance and prejudice. *See id.* at 1272, 1277. The court then evaluated the *Strickland* claims *de novo*. *See id.* at 1280. The court noted that petitioner "'has never been afforded an opportunity to develop [his claimed] factual basis in the crucible of an evidentiary hearing—nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing.'" *Id.* (quoting *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1294 (11th Cir. 2012)). This analysis led the court "to conclude that [petitioner] is entitled to an evidentiary hearing on his penalty phase ineffective assistance of counsel claim because he has alleged sufficient facts that, if true, would entitle him to habeas corpus relief." *Id.*

Respondent does not dispute Mr. Burgess's contention that *Daniel* is "on all fours" with the instant case. Doc. 21 at 193–95. Instead, Respondent urges this Court to ignore *Daniel* because it is not a U.S. Supreme Court decision and therefore does not constitute "clearly established federal law" within the meaning

of § 2254(d).  (Doc. 25 at 36.)  Mr. Burgess does not, however, cite *Daniel* and other Eleventh Circuit cases to establish the relevant Supreme Court law at the time of the state court ruling; rather he cites them because they demonstrate the proper way to apply the "clearly established federal law" of *Strickland* in the context of § 2254(d).  *See*, *e.g.*, *Debruce v. Comm'r, Ala. Dept. of Corr.*, 758 F.3d 1263, 1274–76 (11th Cir. 2014) (citing numerous Eleventh Circuit cases applying *Strickland* under § 2254(d) when holding that the state court unreasonably applied *Strickland*); *Cooper*, 646 F.3d at 1354 (explaining that "[t]his case is strikingly similar to [*Johnson*, 643 F.3d at 936, another § 2254(d) case applying *Strickland*]" when holding that the state court's prejudice determination was unreasonable).

Despite Respondent's attempt to relegate it to the sidelines, *Daniel* controls here.  Applying the Eleventh Circuit's framework to Mr. Burgess's case, this Court should find that, taken as true, the allegations in the operative Rule 32 petition, as amended, allege sufficient facts that, if proved true, would warrant relief.  Because the CCA's conclusion to the contrary was unreasonable, this Court should review the claims *de novo*, and, as the Eleventh Circuit instructed in *Daniel*, conduct an evidentiary hearing and allow the parties to test the evidence in the crucible of an adversarial hearing.

C. **The State Court's Rulings on Mr. Burgess's Ineffectiveness Claims Were Unreasonable.**

1. The State Court's Ruling on Trial Counsel's Ineffectiveness at the Guilt Phase Was Unreasonable.

Respondent spends fewer than three pages defending the state court's merits denial of Mr. Burgess's detailed claim that his trial counsel performed ineffectively by failing to investigate and present readily-available evidence that would have directly supported their defense theory. (Doc. 25 at 28–30.) Incredibly, Respondent urges this Court to find that Mr. Burgess's federal court allegations are "insufficiently pleaded because they are conclusory in nature and fail to state a claim for relief." (Doc. 25 at 28.) Respondent makes this argument despite Mr. Burgess pleading more than 35 pages of allegations—virtually identical to the allegations he pleaded in state court—detailing what precisely trial counsel could and should have discovered and presented on his behalf. (Doc. 21 at 47–82.) This Court must take those allegations as true when evaluating whether the state court's conclusion that they did not state a claim for Sixth Amendment relief was contrary to, or a reasonable application of, federal law. § 2254(d)(1).

Moreover, § 2254(d)(2) specifically authorizes federal courts to consider constitutional claims without deference if a state court's ruling is based on an unreasonable determination of the facts in light of the state court record. Here, the state appellate court held that some of Mr. Burgess's guilt-phase ineffectiveness

claims were insufficiently pleaded because Mr. Burgess "did not plead the name of a single expert that trial counsel should have consulted or used at trial." *Burgess*, 413 So. 3d at 53.  The CCA, however, unreasonably failed to recognize that Mr. Burgess *did* plead the names of experts he alleged trial counsel should have used for his 1994 trial, just as he did in his federal petition.

In state court, Mr. Burgess's proffered amended petition alleged, with respect to each expert claim, the following: 1) the substance of the expert testimony that should have been presented, 2) the specific allegation as to why that testimony would have mattered, 3) the specific allegation that such testimony was available at the time of trial, and 4) the names of specific experts who were available to provide such testimony at his trial in 1994.  (Doc. 19-29 at 101–06; *see also, e.g.*, Doc. 19-26 at 145–95.)  Nothing more is required to establish a prima facie case under *Strickland*.  *See Daniel*, 822 F.3d at 1261.[7]

The CCA's determination that Mr. Burgess "did not plead the name of a single expert that trial counsel should have consulted or used at trial," *Burgess*, 413

---

[7] Although the circuit court denied Mr. Burgess's motion to amend his petition, the CCA's opinion made clear that "even with the facts as alleged in the proposed amendment," the claims in Mr. Burgess's petition "do not meet the specificity and full-factual-pleading requirements" of Alabama law.  *Burgess*, 413 So. 3d at 50. The CCA held that "any error in the circuit court's refusal to grant Mr. Burgess leave to amend his petition was harmless."  *Id.*  In short, the CCA held that the dismissal of this entire portion of Mr. Burgess's ineffectiveness claim, even as amended, was proper.

So. 3d at 53, was unreasonable, and Respondent struggles to defend it.  Respondent

cannot deny what is plain from the state court record: Mr. Burgess *did* plead these

experts' names, and he *did* plead that they, and experts like them, would have been

able to testify to the detailed allegations Mr. Burgess included in his state court

petition.  (Doc. 19-29 at 101–04) (naming experts Kelly Fite, Bruce Levy, Julius

Ballanco, William Lewinski, and Michael Grissom as experts that trial counsel

could and should have called as witnesses at trial).

Respondent does not defend the state court's inaccurate and unreasonable

conclusion that Mr. Burgess did not plead the names of experts who could have

testified at trial.  This is not surprising, because Mr. Burgess plainly did so.

Instead, Respondent argues a different point that was not in any way the basis of

the state court's ruling.  Respondent asserts that Mr. Burgess failed to plead the

names of experts who could *testify at a post-conviction* hearing: "Burgess . . .

faults counsel for failing to call experts without naming the experts who would

testify to these facts *at an evidentiary hearing*."  Doc. 23 at 17 (emphasis added).

Respondent's contention is irrelevant and nonresponsive to the question here.[8]  The

_____

[8] It is ironic that Respondent argues Mr. Burgess failed to plead the names of
experts who would testify at a post-conviction hearing.  When Mr. Burgess pointed
out in the Court of Criminal Appeals that the State was making this argument, the
CCA insisted that Mr. Burgess was misrepresenting the State's position: "Burgess
asserts that the State would require a petitioner to 'name experts who both could
have testified at the time of trial <u>and</u> are guaranteed to be available to testify if the
court grants an evidentiary hearing in the case.'  (Burgess's Reply Brief, p. 12.)

state court's conclusion that Mr. Burgess failed to plead the names of experts who were available to testify at trial is an unreasonable determination of the facts in light of the state court record, and Respondent offers this Court nothing to defend it.[9]

It is clear the basis for the Court of Criminal Appeals's ruling was its determination that Mr. Burgess had failed to name experts who could have testified at trial. However, Respondent also notes in passing the Court of Criminal Appeals's statement that "[t]he circuit court also held that much of the evidence Burgess alleged his counsel should have presented would have been inadmissible at trial." *Burgess*, 413 So. 3d at 53. As Mr. Burgess's petition explains, although it cited to seven different pages of the circuit court's ruling dismissing Mr. Burgess's petition, the Court of Criminal Appeals did not delineate which portions of the allegations might have related to inadmissible evidence, nor did it

---

Burgess's assertion mischaracterizes the State's position." *Burgess*, 413 So. 3d at 48. It is now clear that Respondent *is* arguing Mr. Burgess was required to name experts in his petition who would be available to testify in post-conviction. However, as noted above, this argument is non-responsive to the Court of Criminal Appeals's unreasonable determination that Mr. Burgess had not pleaded the names of experts who could have testified *at trial*.

[9] Lest there be any confusion about Respondent's position, its Brief makes clear that Respondent is concerned *only* with whether Mr. Burgess pleaded the names of experts who could testify in post-conviction, not at trial. (Doc. 25 at 30) ("Burgess continues to make the same mistake in this Court by failing to give the Court the names of experts who would actually testify in support of the allegations in the amended habeas petition.").

explain why Mr. Burgess would not have been entitled to a hearing at least on the claims that the court agreed related to admissible evidence. (Doc. 21 at 87.) Respondent does not make any argument defending this sentence in the CCA's ruling, nor did the CCA itself analyze, let alone adopt, the circuit court's reasoning regarding the admissibility of the evidence Mr. Burgess alleges counsel could and should have presented in support of his defense theory. The CCA simply noted the circuit court's ruling as another basis for summary denial of Mr. Burgess's claims. *Burgess*, 413 So. 3d at 53.

Even if this Court could consider the CCA's note of the circuit court's ruling as a reasoned decision on the merits, the CCA did not address, for example, Mr. Burgess's allegation that a known defect in the design of the firearm used in the crime rendered it prone to unintentional discharge. (Doc. 19-26 at 160–61.) There is no dispute that such evidence would have been admissible at Mr. Burgess's trial, had trial counsel obtained and presented it.

To the extent that the CCA's ruling, with respect to other expert testimony, can be read to endorse a state evidence rule that would have prohibited Mr. Burgess from introducing any evidence regarding where he was, where the victim was, or where they were in relation to each other at the time of the shooting, such a rule is plainly unconstitutional under the Due Process Clause and the state court's reliance on it would therefore be unreasonable under § 2254(d). *See In re*

*Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."); *Washington v. Texas*, 388 U.S. 14, 23 (1967) ("The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use."); *see also United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004) (establishing a four-part test to evaluate when the exclusion of evidence violates a defendant's constitutional rights).

Respondent's brief defending the summary denial of Mr. Burgess's guilt-phase ineffectiveness claims cites no case law and barely attempts to defend the CCA's unreasonable factual and legal conclusions.[10] Mr. Burgess's allegations, taken as true, warrant relief under *Strickland* for the reasons detailed in the petition, and the state court's conclusion to the contrary was objectively unreasonable. *See* § 2254(d). Counsel's representation "so undermined the proper

---

[10] As alleged in his petition, Mr. Burgess's extensive and detailed allegations were sufficient to warrant a hearing on his ineffective-assistance-of-counsel claims *even absent the inclusion of the names of expert witnesses*. (Doc. 21 at 87.) As alleged in the petition, Mr. Burgess's claims were pleaded with far more specificity than the pleading that the Eleventh Circuit found sufficient in *Daniel*. *See id.* at 1270, 1275. Respondent does not respond to this allegation in its Brief.

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The state court's decision to the contrary "blinks reality" and does not warrant deference. *Miller-El II*, 545 U.S. at 266; *see* § 2254(d).

> 2. Under a Constitutionally Proper Review, Mr. Burgess's Counsel Were Ineffective at the Guilt Phase.

After finding the state court's decision unreasonable, this Court should conduct further proceedings and find that Mr. Burgess's counsel were ineffective at the guilt phase. Under a proper review, Mr. Burgess's counsel performed deficiently, and their deficient performance was prejudicial.

Providing effective assistance of counsel requires conducting an investigation that meets an objective standard of reasonableness, based upon prevailing professional norms, and includes retaining appropriate experts. *See, e.g., Wiggins*, 539 U.S. at 515–18; *Strickland*, 466 U.S. at 675; *see also McWilliams v. Dunn*, 582 U.S. 183, 186 (2017) ("[W]hen certain threshold criteria are met, the State must provide an indigent defendant with access to a mental health expert who is sufficiently available to the defense and independent from the prosecution to effectively 'assist in evaluation, preparation, and presentation of the defense.'") (quoting *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). In *Strickland*, the Supreme Court explained that an attorney has a duty to "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466

U.S. at 688; *see also Elmore v. Ozmint*, 661 F.3d 783, 786 (4th Cir. 2011) (holding counsel's "blind acceptance of the State's forensic evidence" constituted ineffective assistance and required habeas relief under § 2254(d)).

In this Reply, Mr. Burgess does not repeat the allegations contained in his petition, because Respondent does not offer any rebuttal to them beyond the cursory arguments noted above. As the allegations in the petition make plain, however, Mr. Burgess's trial lawyers failed to investigate the forensic evidence in the case, which resulted in their "blind acceptance of the State's forensic evidence," manifested by their failure to challenge the State's evidence at trial through cross-examination or to present any defense case whatsoever at the guilt phase of the trial. (Doc. 21 at 38–82.) *See Elmore*, 661 F.3d at 786. The determination of the Court of Criminal Appeals that, even if proved true, Mr. Burgess's allegations do not state a viable Sixth Amendment claim is both contrary to and an unreasonable application of clearly established federal law. *See Strickland*, 466 U.S. at 675.

Three points about counsel's performance warrant emphasis.

*First*, counsel did nothing to investigate or present evidence in support of their defense theory that the shooting was unintentional. Mr. Burgess was charged with one count of murder in the course of a robbery for fatally shooting Louise Crow, an owner of the Decatur Bait and Tackle Shop, inside the store's commode

50

area.  The State claimed that the shooting was intentional and thus charged

Mr. Burgess with capital murder.  Although Mr. Burgess admitted to the police and

the press that he robbed Mrs. Crow, he repeatedly stated that the shooting was

unintentional and that he did not intend to kill her.  (*See, e.g.*, Doc. 19-11 at 65,

68–70, Doc. 19-13 at 140–42; State's Exhibit 101).  In a videotaped statement

shortly after his arrest, Mr. Burgess explained that the unintentional shooting

occurred when Mrs. Crow "hit the gun, [and] the gun went off."  State's

Exhibit 101.

From the outset of the trial, there was no doubt the defense theory was that

the shooting was unintentional.  The only theory of defense about which trial

counsel questioned the prospective jurors was the requirement that capital murder

be the result of an intentional killing committed during the course of an

enumerated felony.  (*See, e.g.*, Doc. 19-5 at 143–44, Doc. 19-6 at 74–76.)  Trial

counsel's theory of defense at the guilt phase was that Mr. Burgess was guilty of

felony, not capital, murder, because the shooting was unintentional.  (*See, e.g.*,

Doc. 19-12 at 3–5, 18–19.)

In light of counsel's argument that the shooting was unintentional, they had

every reason to develop evidence supporting that theory.  *See Williams v. Allen*,

542 F.3d 1326, 1340 (11th Cir. 2008) (emphasizing that since counsel's defense

focused on a certain theory, they had "every incentive" to develop the strongest

evidence in support of that theory); *see also Wiggins*, 539 U.S. at 532. Yet they did nothing to develop or present such evidence.

The Supreme Court has held that an inadequate investigation is a hallmark of deficient performance in capital defense practice, highlighting counsel's "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Hinton*, 571 U.S. at 274 (quoting *Strickland*, 466 U.S. at 690–91). Here, counsel did neither, despite the fact they acknowledged that the forensic evidence was integral to the state's case. (Doc. 21 at 40) (quoting trial counsel's representation to the court that "[t]here is a lot of forensic evidence in this case and a lot of witnesses in this case," and that "[t]here is a lot of leg work that [co-counsel] and I can't do"). As the petition details, counsel obtained funds for an investigator who then did so little work he never submitted a bill (Doc. 21 at 44–45); they repeatedly told the trial court they were unprepared to go to trial (Doc. 21 at 45–46); and they ultimately failed to interview any of the State's experts, or obtain any defense experts of their own (Doc. 21 at 46.) They did not advance their guilt phase theory in any way through cross-examination of the State's witnesses, and they presented no testimony or evidence of their own on Mr. Burgess's behalf. (Doc. 21 at 47–48.)

*Second*, ample available evidence supported the defense theory that would have rendered Mr. Burgess ineligible for the death penalty. There was no direct

evidence of Mr. Burgess's intent to commit murder.  The State sought to prove that Mr. Burgess had intentionally killed Mrs. Crow by asserting that Mr. Burgess shot her "between the eyes" (Doc. 19-8 at 33, Doc. 19-12 at 35), while she was seated on the toilet in the commode area of the tackle shop.  (Doc. 19-12 at 27–28, 35.) The prosecution argued that the physical evidence proved the shooting was intentional.  (*See, e.g.*, Doc. 19-12 at 20–25, 27–32.)  As detailed in the petition, persuading the jury that Mrs. Crow had been seated when she was shot was particularly important to the prosecution's case because it undermined Mr. Burgess's account that Mrs. Crow struck the handgun, causing it to discharge unintentionally.

However, as the petition details, an investigation of the crime, including consultation with readily available, qualified expert witnesses, would have allowed defense counsel to present evidence both directly and through cross-examination, that the killing was unintentional.  (Doc. 21 at 48–49.)  Through presentation of the testimony of reasonably available experts and effective cross-examination of the State's witnesses, the jury would have heard that the physical evidence supported the conclusion that the firearm was defective and prone to unintentional discharge; that the trajectory of the bullet and the injury Mrs. Crow suffered were consistent with Mr. Burgess's account of an unintentional killing and inconsistent with the prosecution's theory; that the condition of the crime scene, including the shattered

53

toilet, refuted the State's contention that Mrs. Crow was shot while seated on the toilet and supported the conclusion that she was standing when shot;[11] and that law enforcement's incompetent handling of the firearm and crime scene destroyed evidence that likely supported the defense of unintentional shooting. (Doc. 21 at 49–82.) Counsel unreasonably failed to develop or present any of this evidence.

*Third*, Mr. Burgess pleaded the specific testimony that his named experts could and should have presented at trial in Decatur in 1994, as well as favorable testimony counsel would have elicited on cross-examination of the State's experts had they properly consulted with their own experts. For example, with respect to each named expert he alleges could and should have testified at his trial, the Second Amended Petition pleaded the specific reasonably available facts that the expert could have testified to in support of the defense theory that the shooting was unintentional. (*See, e.g.*, Doc. 19-26 at 160–61) (detailing available testimony of firearms expert); (Doc. 19-26 at 164–65) (detailing available testimony of forensic

---

[11] Specifically, as Mr. Burgess alleged in state court, effective cross-examination of the State's lead investigator, Gary Walker, would have elicited evidence undermining the credibility of the State's argument that Mrs. Crow was seated at the time she was shot. Walker's own report describing the crime scene contradicted the State's theory. The report states: "It appears to me from the wound track that she was standing up when she was shot. This would account for the busted commode because Mrs. Crow weighed 274 lbs. when she was weighed at B'ham." As with the rest of the evidence noted above, the jury never heard Investigator Walker's opinion about Mrs. Crow's position because of counsel's failure to investigate and cross-examine him on the issue. (Doc. 19-26 at 172.)

pathologist); (Doc. 19-26 at 168–171) (detailing available testimony of plumbing expert); (Doc. 19-26 at 173) (detailing available testimony of forensic pathologist and/or firearms expert); (Doc. 19-26 at 174–76) (detailing available testimony of lethal force expert); (Doc. 19-26 at 179–81, 185–201) (detailing available testimony of crime scene investigator).

As Mr. Burgess alleged in the petition, there is a reasonable likelihood that, individually and collectively, the affirmative evidence and cross-examination detailed in the petition would have raised a reasonable doubt about whether the killing was intentional. Consequently, there is a reasonable probability that Mr. Burgess would not have been convicted of capital murder. *See Strickland*, 466 U.S. at 675. Yet, as explained above, the state court, with no analysis of the underlying record or factual allegations, held that even accepting Mr. Burgess's allegations as true, he did not state a claim for relief under the Sixth Amendment. *Burgess*, 413 So. 3d at 53. This was an unreasonable conclusion on both the law and the factual record. § 2254(d)(1); § 2254(d)(2).

Because the state court never held an evidentiary hearing on Mr. Burgess's claim of ineffective assistance of counsel, this Court should afford him an opportunity to present evidence in support of his ineffectiveness claim. *See Daniel*, 822 F.3d at 1280–81 (remanding for an evidentiary hearing under § 2254(e)(2) where the petitioner "tried, but was not given the opportunity to

55

develop the factual bases of the claim in state court"); § 2254(e)(2).  Following

those further proceedings, Mr. Burgess respectfully requests that the Court vacate

his conviction under *Strickland* and the Fifth, Sixth, Eighth, and Fourteenth

Amendments to the United States Constitution.

> 3. <u>The State Court's Ruling on Trial Counsel's Ineffectiveness at the Penalty Phase Was Unreasonable.</u>

This is a death penalty case in which trial counsel repeatedly informed the

trial court they were unprepared for trial—not only for the guilt phase, as discussed

above, but for the penalty phase as well.  Three weeks before the trial began,

counsel unsuccessfully sought a continuance, representing that they "[could not]

properly prepare the case for trial."  (Doc. 19-1 at 164.)  On the day trial began,

one of Mr. Burgess's lawyers again pleaded for a continuance, again

unsuccessfully.  The lawyer stated that in his twenty years of practice, he did not

"ever remember asking for a continuance in a criminal case because I wasn't

prepared, but in this case, it's just, it's been *impossible*."  (Doc. 19-4 at 90–91)

(emphasis added).  As explained above, the guilt phase of the trial began that day,

(Doc. 19-4 at 103), and Mr. Burgess's lawyers presented no evidence in his

defense.

The lawyers had not prepared for the penalty phase either, by their own

admission.  Immediately after the jury returned its guilty verdict, counsel again

moved for a continuance because they had not even "talk[ed] to . . . any" potential

mitigation witnesses.  (Doc. 19-12 at 102.)  "[We] told the Court," counsel

reminded the trial judge, "that we would not be prepared to try this case, that we

had not had adequate time to prepare."  *Id.*[12]  The court denied the request for a

continuance at 3:50 p.m. and gave counsel until 9:00 a.m. the next day to prepare

for the penalty phase.  (Doc. 19-12 at 104.)  Between the court recess and trial the

next day, counsel billed 2.8 hours for "[p]repar[ing] for penalty phase."  (Doc. 21

at 96.)  In those few intervening hours, counsel found and subpoenaed to testify

Mr. Burgess's mother, his father, a teacher, and an acquaintance, all four of whom

testified briefly, without preparation.  (Doc. 21 at 100.)  Counsel introduced no

social history records of any kind or any expert testimony.

Against that backdrop, it is unfathomable that the Court of Criminal Appeals

affirmed the circuit court's ruling that "[i]t is clear that [trial] counsel had

undertaken the investigation and preparation of a sentencing defense that included

family or social history."  *Burgess*, 413 So. 3d at 54.  Mr. Burgess's own trial

counsel made as plain a record as could be made that the CCA's conclusion is

simply not true.  This ruling is not only unreasonable under § 2254(d), it is the

---

[12] On the first day of trial, defense counsel alluded to an investigator's attempt in
the two or three days before the trial began to talk to unspecified witnesses,
without success.  (Doc. 19-4 at 92.)  As Mr. Burgess pleaded in state and federal
court, however, this investigator did not submit a bill for any work, and counsel did
not spend a single dollar of the funds the trial court authorized for investigation in
the case.  (Doc. 21 at 44–45.)

opposite of what the record shows, and the opposite of what the allegations in

Mr. Burgess's petition demonstrate.  Because the record speaks for itself, and

because Mr. Burgess's allegations must be taken as true, *Daniel*, 822 F.3d at 1261,

this Court should easily conclude that the state court's determination that

Mr. Burgess's ineffective assistance of counsel claims were "due to be dismissed

for failure to state a claim" was contrary to, and involved an unreasonable

application of, clearly established federal law, *Borden*, 646 F.3d at 817–18 (citing

§ 2254(d)(1)), and constituted an unreasonable determination of the facts in light of

the state court record.  § 2254(d)(2).

Respondent's defense of the state court's merits ruling consists merely of

quoting that ruling and stating in a conclusory fashion that the ruling did not

violate § 2254(d).  (Doc. 25 at 30–36.)[13]  Respondent therefore offers this Court

---

[13] In one sentence each, the State makes two additional arguments that this Court
can quickly dispense with.  (Doc. 25 at 30.)  First, the State argues that the facts in
Paragraph 151 of Mr. Burgess's federal petition were not presented in state court
"and should not be considered by this Court."  (Doc. 25 at 30.)  To the contrary,
Mr. Burgess presented the facts alleged in that paragraph, virtually verbatim, in his
Second Amended Petition.  (Doc. 19-27 at 76.)  Second, the State argues that "this
claim is insufficiently pleaded because it is conclusory in nature and fails to state a
claim for relief."  (Doc. 25 at 30.)  The State does not explain why this Court
should deem Mr. Burgess's penalty-phase ineffectiveness claim "conclusory in
nature" and it cites no case law in support.  As explained herein, the claim alleges
detailed facts with respect to counsel's deficient performance and the way in which
it prejudiced Mr. Burgess at the penalty phase of his trial.  (Doc. 21 at 91–190.)
Absent any actual explanation for its position that the claim is insufficiently
pleaded, this Court should reject the State's argument.

nothing in support of the CCA's unreasonable conclusion that trial counsel

conducted an investigation into Mr. Burgess's "family or social history."

Nevertheless, several points bear emphasis.

  *First*, this is not a death penalty case in which counsel conducted an

investigation, but it was insufficient.  Here, the investigator trial counsel hired did

not bill for *any* of the funds allocated for investigation, and trial counsel told the

court the day before the penalty phase began that they had not spoken to a single

witness.  (Doc. 21 at 44–45, 94.)  In many capital cases in which the Supreme

Court has found deficient performance with respect to sentencing, counsel

conducted *some* mitigation investigation but failed to conduct the kind of

"thorough investigation" that *Strickland* requires.  *See*, *e.g.*, *Rompilla*, 545 U.S. at

381–83 (holding, under § 2254(d), that the state court unreasonably failed to find

deficient performance even though counsel made "a number of efforts, including

interviews with [the defendant] and some members of his family"); *Wiggins*, 539

U.S. at 522 (holding, under § 2254(d), that the state court unreasonably failed to

find deficient performance even though counsel gathered some information about

the client's background and arranged for a psychologist to evaluate the client).

Here, the extent of trial counsel's preparation for the penalty phase cannot even be

considered an investigation at all, let alone a "cursory" one.  *Id.* at 527 ("*Strickland*

does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy.").

As the Second Amended Petition alleges, when the trial began, but for two sets of records, trial counsel had no information about Mr. Burgess or his family with regard to any aspect of his life history.  This was the case not because they had tried and failed to obtain, for example, medical and social services records. They had not even *tried* to do so, which was a clear abdication of their responsibilities as defense counsel in a capital case.  *See, e.g., Strickland*, 466 U.S. at 690–91("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (finding counsel deficient for not "obtain[ing] any of Porter's school, medical, or military service records or interview[ing] any members of Porter's family"); *Williams v. Taylor*, 529 U.S. 362, 396 (2000) (holding that "trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background"); *Wiggins*, 539 U.S. at 534 ("Counsel's investigation into Wiggins' background did not reflect reasonable professional judgment. Their decision to end their investigation when they did was neither consistent with the professional standards that prevailed in 1989, nor reasonable in light of the evidence counsel uncovered in the social services records – evidence that would have led a reasonably competent attorney to

investigate further."); *id.* at 524 (explaining that "well-defined norms" for capital

defense attorneys as early as 1989 required that counsel should consider presenting

their client's "medical history, educational history, employment and training

history, family and social history, prior adult and juvenile correctional experience,

and religious and cultural influences").

When his trial began, Mr. Burgess's lawyers had not interviewed a *single*

*potential mitigation witness*.  The only records in their possession were

Mr. Burgess's Decatur City School records, which had been subpoenaed and were

produced to counsel on the day the trial began, and Mr. Burgess's Decatur General

Hospital records, which had been obtained about a week prior to trial.  (Doc. 19-26

at 198.)  The minimal records counsel did obtain on the eve of trial contained

mitigating evidence and leads to other mitigating facts and witnesses, yet trial

counsel did nothing to pursue them.  *See Wiggins*, 539 U.S. at 527 (observing that

a court assesses "the reasonableness" of a mitigation investigation not only by

what counsel knew, "but also whether the known evidence would lead a reasonable

attorney to investigate further"); *see also Williams v. Taylor*, 529 U.S. at 395

(finding counsel's penalty phase preparation deficient where "[t]he record

establishes that counsel did not begin to prepare for [the penalty] phase of the

proceeding until a week before the trial").  The school records, for example,

identified teachers who were available and willing to provide mitigating

information about the extreme poverty that Mr. Burgess and his family endured,

his mother's severe intellectual and emotional deficits, and other significant

challenges that adversely affected his childhood and adolescence.  The medical

records included reports and notes detailing specific injuries, medical emergencies,

and other events that shed light on Mr. Burgess's efforts to survive on the streets

and chronic stressors he experienced during the more than two years that he was a

homeless minor prior to his arrest.[14]  Trial counsel followed up on none of this.

*See Rompilla*, 545 U.S. at 382 (finding trial counsel deficient where they "never

examined" school records they had obtained and "did not consult" other social

history records they had also obtained).

Thus, as of June 20,1994, the first day of Mr. Burgess's capital murder trial,

counsel had no mitigating evidence—either documentary or testimonial—to

present.  (Doc. 19-26 at 198.)  Needless to say, in the few evening hours between

the end of the guilt phase of the trial and the start of the penalty phase, counsel did

not pursue the information contained in either set of records.  It is therefore

unsurprising that counsel also did not seek the assistance of any mental health

experts who could have explained the impact of Mr. Burgess's life history on his

psychosocial development.  (Doc. 21 at 168–69.)

---

[14] Mr. Burgess named specific individuals in his petition who were available to speak to the compelling circumstances of his upbringing.  (Doc. 19-27 at 2–3.)

Respondent points to nothing—nothing in the record, nothing anywhere—that supports the CCA's conclusion that "counsel had undertaken the investigation and preparation of a sentencing defense that included family or social history," *Burgess*, 413 So. 3d at 54. When this Court considers the unrefuted record of counsel's admissions that they were unprepared for the penalty phase alongside the allegations in the petition that the Court must accept as true, there can be no doubt that the state court's determination was unreasonable, and that the facts alleged, taken as true, establish counsel's deficient performance.

*Second*, the Court of Criminal Appeals unreasonably found that the circuit court was "correct" in concluding that Mr. Burgess failed to plead specific facts in his Second Amended Petition that would have been discovered had trial counsel obtained social history records. *Burgess*, 413 So. 3d at 57. This too was an unreasonable determination, because Mr. Burgess did extensively plead such specific facts in his petition. *See* § 2254(d)(2). For example, Mr. Burgess alleged the specific categories of social history records his counsel could readily have obtained. (*See, e.g.*, Doc. 19-27 at 11–12) (listing records). He also identified specifically where social history records could be found. (*See, e.g.*, Doc. 19-26 at 201) ("Counsel did not request records from social service agencies, even though the Decatur General Hospital records they had in their possession show that hospital social workers

made neglect referrals to the Morgan County Department of Human Resources regarding Mr. Burgess within two years of his arrest.").  And Mr. Burgess detailed what beneficial information the social history records contained.  (*See, e.g.*, Doc. 19-27 at 46–47) (quoting an Emergency Room physician note in a medical record that Mr. Burgess faced "a multitude of stressors including . . . being kicked out of one home to the next, to the next, while looking for work"); (Doc. 19-27 at 28, 34, 35) (describing school records).

*Third*, the state court unreasonably characterized this claim as Mr. Burgess's "allegation that his counsel should have called more witnesses at the penalty phase." *Burgess*, 413 So. 3d at 55.  As he detailed in his petition, Mr. Burgess's claim is not that he should have called "more witnesses"; it is that his trial counsel unreasonably failed to investigate and present an available mitigation case, which allowed the prosecutor to mock the meager, false, and misleading testimony they did present.  (Doc. 21 at 101–02.)

The morning after the guilt phase of the trial ended, the defense called four witnesses: Mr. Burgess's parents, Maggie and Bill Burgess (Doc. 19-12 at 123–36; 148–59); Mr. Burgess's third-grade teacher, Maxine Ellison (Doc. 19-12 at 137–47); and a young woman with whom Mr. Burgess had a brief relationship, Danyelle Douglas.  (Doc. 19-12 at 160–63.)  Counsel spoke to these witnesses for the first time about their testimony, if at all, either late in the afternoon that the

guilt phase concluded or early on the morning the penalty phase began, just before court reconvened.  The testimony of these witnesses was not the culmination of any investigation into Mr. Burgess's social history.  It was a desperate, last-minute effort to do something in the penalty phase of a capital trial for which counsel had acknowledged, on the record, they were unprepared.

Because counsel had not conducted a social history investigation, they had no basis to decide which witnesses to call in mitigation, much less what questions to ask them. The testimony of these four witnesses, combined, comprised just forty transcript pages.  (Doc. 19-12 at 123–63.)  And, as detailed in the Second Amended Petition, the testimony affirmatively misled the jury regarding the true facts of Mr. Burgess's life and worked to the unmistakable advantage of the prosecution's argument that Mr. Burgess was deserving of the death penalty. (Doc. 21 at 103–07.)

For example, the sum and substance of Maggie Burgess's testimony was that her son was a "good child" (Doc. 19-12 at 125); that she did not know whether Mr. Burgess might have felt neglected by his father (Doc. 19-12 at 126–27); and that she believed that his father did not do as much for Mr. Burgess as he did for his other children.  (Doc. 19-12 at 135–36.)  Trial counsel initially told the court that he had no further questions, but there was a short recess, and he recalled Mrs. Burgess.  (Doc. 19-12 at 128.)  Almost immediately, counsel asked Maggie

Burgess why she had separated from Bill Burgess.  (Doc. 19-12 at 129.)  She

turned to the judge and wanted to know whether she had to answer; the court

instructed her to answer.  (Doc. 19-12 at 129–30.)  The judge asked whether

counsel wished to exclude witnesses from the courtroom, but counsel unreasonably

declined to exclude Bill Burgess from the courtroom.  (Doc. 19-12 at 130.)

Bill Burgess was sitting in the courtroom, watching his wife testify about

their relationship.  In his presence, Mrs. Burgess answered the question

untruthfully, simply stating that the couple separated because she was young and

they could not get along.  (Doc. 19-12 at 131.)  Mrs. Burgess denied that Bill

Burgess was abusive to the children, (Doc. 19-12 at 131), and she agreed that Bill

Burgess still supported the family after he left them.  Counsel readily could have

proved this testimony was false had they conducted even a minimal investigation

into Mr. Burgess's childhood.  (Doc. 19-12 at 133–35.)  Counsel ended the short

direct examination by attempting to impeach their own witness—Mr. Burgess's

mother—about whether Bill Burgess cared for Mr. Burgess as much as for the

other children.  (Doc. 19-12 at 135–36.)

Because counsel had not conducted a social history investigation, they could

not present, through witnesses and documents, available mitigating evidence about

the facts of Bill Burgess's violence towards his wife and children and the facts

about Bill Burgess's abandonment of his family, as well as the consequences of

these events in Mr. Burgess's developmental history.  Thus, as a result of trial

counsel's deficient performance, Maggie Burgess's testimony was harmful to the

defense case.  The prosecutor was able to argue that the defense had presented no

"horror stories" about Mr. Burgess's childhood and no evidence of abuse or

deprivation that might explain Mr. Burgess's murder of Mrs. Crow.  (Doc. 19-12 at

182.)

        Indeed, as a result of trial counsel's failure to investigate Mr. Burgess's life

history, the prosecutor was able to argue that Mr. Burgess had "a significantly

small amount of mitigating circumstances . . . . We don't see the child being

abused.  We don't see the terrible circumstances."  (Doc. 19-13 at 28.)  As the

prosecutor further pointed out, the jury heard no evidence of sexual or physical

abuse or deprivation:

> There are horror stories in this world about how children are brought
> up.  How they're sexually and physically abused and deprived and
> beaten and things of that nature.  That's the kind of thing I think you're
> talking about when you're talking about – people sometimes get raised
> up where they got no choice other than just to be virtually just animals.
> Did you hear anything like that in this case?

(Doc. 19-12 at 182.)

        In fact, the evidence detailed in Mr. Burgess's petition would have

established his childhood was marked by persistent violence, emotional neglect

and abandonment, and ultimately, homelessness.  Because his counsel failed to

investigate, the jury never heard that, as detailed in the Second Amended Petition,

67

Mr. Burgess's father physically abused Mr. Burgess and his siblings (Doc. 19-27 at 19, 21); his father sexually molested Mr. Burgess's disabled sister, Michelle, and his sister Barbara (Doc. 19-27 at 20–21, 23); his mother was mentally ill and suffered from cognitive disabilities (Doc. 19-27 at 23–25); she emotionally abandoned and physically abused her children (Doc. 19-27 at 22–24); and she separated from Mr. Burgess's father because he was physically abusive, and on one occasion threatened to cut her throat.  (Doc. 19-27 at 22.)

The jury and judge never heard that Mr. Burgess grew up in extreme poverty (Doc. 19-27 at 26–27), and had a history of untreated, chronic, severe headaches (Doc. 19-27 at 41); he suffered head trauma on multiple occasions, including two separate incidents in which he was stabbed in the head (Doc. 19-27 at 41–42); he became homeless at the age of fifteen (Doc. 19-27 at 37–38), when there were no local resources for homeless teenagers (Doc. 19-27 at 38); medical and social work staff at the emergency room where he occasionally sought help were concerned about his mental and physical well-being, but were unable to obtain assistance for him through the Department of Human Resources (Doc. 19-27 at 44–47); during this period, he was profoundly depressed and had attempted suicide (Doc. 19-27 at 48, 50, 52–54); and near the time of his arrest, he believed he was dying of brain cancer or a brain tumor.  (Doc. 19-27 at 54.)

68

*Fourth*, the Court of Criminal Appeals asserted that Mr. Burgess had not named experts he contended trial counsel could have called to testify at the penalty phase, *Burgess*, 413 So. 3d, at 56.  He did in fact do so.  (Doc. 19-29 at 104–06.) Once again, the State's only defense of the state court's unreasonable determination is to misapprehend the issue.  The State argues that Mr. Burgess did not name "the experts who would testify to [the alleged facts] at an evidentiary hearing."  (Doc. 25 at 34.)  Whether the experts Mr. Burgess named would testify at a post-conviction hearing was not the state court's concern; the state court's conclusion was that Mr. Burgess had not pleaded the names of experts whom Mr. Burgess could have called *at trial*.  And on that point, the State apparently agrees with Mr. Burgess that he had done so: "[Mr. Burgess] refers to experts who counsel should have consulted with and called . . . ."  (Doc. 25 at 34.)  Where both Mr. Burgess and the State agree on facts that are contrary to the state court's determination, this Court should easily conclude that the state court reached an unreasonable determination in light of the state court record.

In sum, the CCA's ruling was contrary to and an unreasonable application of federal law, as well as an unreasonable determination of the facts in light of the

69

state court record.  As in *Daniel*, this Court must now allow him an opportunity to prove his claim in an evidentiary hearing.  *Daniel*, 822 F. 3d at 1280.[15]

        4.    <u>Under a Constitutionally Proper Review, Mr. Burgess's Counsel Were Ineffective at the Penalty Phase.</u>

Because the state court's rulings do not preclude relief or warrant deference, this Court should hold an evidentiary hearing and find that Mr. Burgess's attorneys were ineffective at the penalty phase.  *Strickland*, 466 U.S. at 694.  The Court must consider the representation in its entirety—counsel's failure to prepare for the penalty phase; failure to gather readily-available social history records and interview relevant, available witnesses; failure to consult with mental health experts; and counsel's presentation at the penalty phase before the jury, which comprised a mere 40 pages of transcript and rendered Mr. Burgess's traumatic upbringing entirely invisible.[16]

---

[15] As Mr. Burgess extensively pleaded in his petition, the state court's reliance on the Court of Criminal Appeals's decision in *Daniel* is particularly misplaced. (Doc. 25 at 31) (citing state court's reference to *Daniel v. State*, 86 So. 3d 405, 437 (Ala. Crim. App. 2011)).  As Mr. Burgess pointed out, while the Court of Criminal Appeals affirmed the denial of Daniel's post-conviction ineffectiveness claims, the Eleventh Circuit held, contrary to the state court's ruling, that Daniel's petition pleaded sufficient facts that, if true, demonstrated counsel's deficient performance and prejudice under *Strickland*.  *Daniel*, 822 F. 3d at 1270, 1275.  Mr. Burgess's petition specifically recites the ways in which his case is on all fours with *Daniel*. (Doc. 21 at 193–96.)  Again, the State's only response to *Daniel* is to contend that it is not clearly established federal law, which, as explained above, misconstrues the reason why the case is relevant in this habeas proceeding.  (Doc. 25 at 36.)

[16] As explained above, Mr. Burgess's ineffectiveness claims cannot be considered in isolation.  In *Daniel*, for example, the Eleventh Circuit held that the CCA's

With respect to prejudice, in cases like Mr. Burgess's, where the available evidence presented in post-conviction is far more extensive and persuasive than that presented at trial, *Strickland*'s second prong is satisfied.  For example, in *Wiggins*, the Supreme Court found sufficient prejudice where trial counsel's deficient investigation did not uncover powerful mitigating evidence of the "severe privation and abuse" Wiggins had faced.  539 U.S. at 534–35.  Because counsel did not put forward the "powerful mitigating narrative" available to them and the State lacked evidence of aggravating factors to outweigh the missing information, the Court held that trial counsel's presentation prejudiced Wiggins.  *Id.* at 537–38; *see also Williams v. Allen*, 542 F.3d at 1342 ("The mitigation evidence that Williams' trial counsel failed to discover paints a vastly different picture of his background than that created by [the defendant's mother's] abbreviated testimony.").

An important factor in determining prejudice is finding that compelling mitigating evidence was available to counsel but not presented to a jury.  For

---

decision was unreasonable because it "unreasonably failed to consider the prejudicial effect of trial counsel's deficient performance based on the 'totality of available mitigating evidence,'" which *Wiggins*, 539 U.S. at 510, requires. 822 F.3d at 1277. The Eleventh Circuit also held that the CCA's decision to deny Daniel relief was unreasonable because it "broke up Mr. Daniel's penalty phase ineffective assistance of counsel claim into different subparts, then analyzed them separately," and in considering each factor in isolation, it "never considered what would be the combined effect of all mitigating evidence in producing a different outcome at sentencing."  *Id.* at 1278.

example, in *Debruce*, counsel's deficient investigation left him unaware of the wealth of available information about petitioner's "troubled history." 758 F.3d at 1276. The sentencing jury heard, instead, incomplete and "falsely embellished testimony" that "although he had an impoverished childhood, it was otherwise unremarkable." *Id.*

Here, the state court unreasonably concluded that any evidence presented in post-conviction would merely be cumulative to the brief testimony of the four witnesses who testified. *Burgess*, 413 So. 3d at 57. However, Mr. Burgess pleaded specific facts showing that, but for counsel's deficient performance, there is a reasonable likelihood that the result of the penalty phase would have been different; the available mitigating evidence was powerful in contrast to counsel's anemic, inaccurate, and ultimately damaging penalty phase presentation. (Doc. 19-27 at 4–5.) The petition extensively detailed the available mitigating evidence. (Doc. 19-27 at 11–57). Mr. Burgess specifically alleged that trial counsel could have presented "compelling, detailed evidence . . . of economic and emotional deprivation as well as physical and psychological trauma." (Doc. 19-27 at 5.) In *Wiggins*, "counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." 539 U.S. at 524. In Mr. Burgess's case, there was no investigation to

abandon; counsel had spoken to no witnesses, and explicitly confirmed on the record that they were unprepared for the penalty phase.

Absent any testimony describing the extreme adversities of Mr. Burgess's upbringing and homelessness, the prosecutor was able to argue that Mr. Burgess experienced no abuse, and Mr. Burgess was not in "the dire circumstances that most of the defendants that we deal with in these kind of cases come through." (Doc. 19-13 at 28.)  Had counsel presented the detailed, available, and forceful mitigating evidence alleged in the petition, the prosecutor would not have been able to make the argument, and there is a reasonable probability that the result of the penalty phase would have been different.  *See*, *e.g.*, *Debruce*, 758 F.3d at 1276 (finding prejudice where counsel failed to present evidence that the defendant had an "alcoholic and disengaged father," had suffered "beatings," and had been raised in a neighborhood with "pervasive violence"); *Williams v. Allen*, 542 F.3d at 1342 (finding prejudice where counsel failed to present evidence that the defendant was raised in a household "in which severe beatings and other forms of violence occurred on a near constant basis"); *see also Brownlee v. Haley*, 306 F.3d 1043, 1073–74 (11th Cir. 2002) (explaining, in a pre-AEDPA case, that "[w]hat we can say is that our confidence in the jury's balancing of the aggravating and mitigating circumstances, and its resulting recommendation of death, has been substantially

undermined as a result of counsel's failure to present to the jury any of the powerful mitigating evidence that was available").

In sum, the dismissal of the evidence in Mr. Burgess's Rule 32 petition as insufficient to establish the ineffectiveness of his counsel is contrary to and an unreasonable application of clearly established federal law.  Mr. Burgess was never given any opportuntity, let alone a full and fair one, to present evidence in support of his allegations that his counsel were ineffective at the penalty phase.  Therefore, this Court should hold an evidentiary hearing to allow Mr. Burgess to present evidence in support of his allegations.  *See Daniel*, 822 F.3d at 1280–81 (remanding for an evidentiary hearing under § 2254(e)(2) where the petitioner "tried, but was not given the opportunity to develop the factual bases of the claim in state court").  The Court should then find that the attorneys were ineffective with respect to sentencing, and it should vacate Mr. Burgess's death sentence under *Strickland* and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[17]

---

[17] Mr. Burgess has also alleged that his trial counsel were ineffective for failing to present mitigating evidence at the judge-sentencing phase of his trial, several months after the jury returned its verdict.  (Doc. 21 at 302–06.)  Respondent argues that Mr. Burgess raised this claim only as a state law claim and is therefore barred from raising it as a Sixth Amendment claim in federal court.  (Doc. 25 at 64.)  Respondent's argument has no merit, as the claim was plainly pleaded and argued throughout state court proceedings as a claim of ineffective assistance of counsel. (Doc. 19-26 at 144) ("By virtue of the individual and cumulative effect of each of the instances of ineffective assistance of trial counsel, as described herein,

### III.    MR. BURGESS'S FEDERAL HABEAS CLAIMS ARE SUFFICIENTLY PLEADED.

Respondent identifies 20 claims or sub-claims that it urges this Court to dismiss because they are insufficiently pleaded.  (Doc. 25 at 20–22.)  In one section of its Brief, Respondent lists the claim numbers for the claims it contends are insufficiently pleaded, and then refers the Court to another section of the Brief for what it claims is a "detailed explanation of the case law" supporting its argument for summary dismissal.  (Doc. 25 at 22.)  In fact, Respondent includes only two paragraphs of explanation for its contention that all these claims are insufficiently pleaded.  (Doc. 25 at 14–15.)  This Court should reject Respondent's cursory argument and consider the claims as pleaded under the appropriate standard.

Respondent's "detailed explanation of the case law" is actually just a brief recitation of the federal habeas pleading rules, which are straightforward and require a federal petition to specify the grounds for relief asserted, as well as the "facts supporting each ground."  Habeas Rule 2(c); *see also Borden*, 646 F.3d at

---

Mr. Burgess was denied his right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, parallel provisions of the Alabama Constitution, and other applicable state, federal, and international law."); (Doc. 19-26 at 145) (citing *Strickland* and other Sixth Amendment cases); (Doc. 19-37 at 93) (raising on appeal the claim that "the circuit court erred in dismissing the claims that trial counsel were ineffective at the sentencing hearing"); (Doc. 19-37 at 94) (citing several cases expressly addressing Sixth Amendment ineffectiveness claims).

809 (describing habeas pleading standard under Rule 2).  Respondent cites several cases that faithfully quote the rule, (Doc. 25 at 14–15) (citing cases), but only one in which a court actually found that a petitioner had not adequately pleaded a federal claim under Rule 2.  (Doc. 25 at 14) (citing *Hittson v. GDCP Warden,* 759 F.3d 1210, 1265 (11th Cir. 2014)).

*Hittson* is readily distinguishable.  In *Hittson*, the Eleventh Circuit found that several of petitioner's ineffective assistance of counsel claims were insufficiently pleaded in the federal habeas petition under Rule 2 because they consisted solely of "generalized allegations" that failed to state specific facts in support.  759 F.3d at 1265.  In that case, however, the pleaded claims did not in any way state what petitioner was alleging.  The entirety of the claims were pleaded as follows:

> [S]tate habeas counsel failed to pursue obvious avenues of investigation, resulting in a failure to raise meritorious and potentially meritorious claims. Ineffective Assistance claims which Mr. Hittson believes are "substantial" and which have "some merit" were available to be litigated in state habeas proceedings but post-conviction counsel unreasonable failed to raise them.

*Id.* at 1264–65.  By contrast, the claims Respondent argues are insufficiently pleaded in Mr. Burgess's petition look nothing like the cursory allegation in *Hittson*.

For example, one of the claims Respondent alleges is insufficiently pleaded is Mr. Burgess's claim that his trial counsel were ineffective for failing to withdraw his plea of not guilty by reason of mental disease or defect.  (Doc. 21 at

197–99.)  Respondent argues, "Burgess alleges that counsel's failure to withdraw the plea in a timely manner undermined his defense theory, however, Burgess fails to identify how this defense theory was undermined."  (Doc. 25 at 36.)  In fact, Mr. Burgess pleaded the specific, explicit way in which counsel's failure undermined their defense theory:

> Counsel's failure prejudiced Mr. Burgess.  Because the plea was not withdrawn prior to voir dire, the venire was told repeatedly that Mr. Burgess had pleaded both not guilty *and* not guilty by reason of mental disease or defect.  During voir dire, the prosecutor extensively discussed both pleas, making clear that it was Mr. Burgess's burden to prove a defense based on his mental state.  (Doc. 19-5 at 5–7, 104–05, Doc. 19-6 at 25–26, 122–24, 207–09.)  The seated jurors therefore expected Mr. Burgess to prove a mental state defense.  By not withdrawing the plea in a timely manner, counsel left the jury with the impression that Mr. Burgess would concede all the elements of the offense of capital murder and rely upon an affirmative defense to the charge based on his mental state.  After closing arguments and instructions from the court, a juror asked a bailiff, "[W]hen will they go into the mental stage?"  (Doc. 19-12 at 63.)  The judge then brought the jury out and instructed them, without objection, that Mr. Burgess had withdrawn his plea of not guilty by reason of mental disease or defect and that the withdrawal of the defense should not be held against Mr. Burgess.  (Doc. 19-12 at 65–67.)

(Doc. 21 at 198.)  Respondent simply ignores these detailed factual allegations.[18]

---

[18] With respect to other claims, Respondent again argues that Mr. Burgess has not supplied the names of experts who will testify at a post-conviction evidentiary hearing, even though it acknowledges he has pleaded the names of witnesses who could have testified at trial.  *See, e.g.*, Doc. 23 at 17 ("Burgess thus faults counsel for failing to call experts without naming the experts who would testify to these facts at an evidentiary hearing.").  Because the petition alleges what reasonably competent trial counsel would have done *at trial*, Mr. Burgess names the experts

Mr. Burgess's claims are pleaded with more than enough specificity to meet the federal pleading standard, and Respondent does not seriously attempt to argue otherwise.  Although Respondent lists a number of claims in Mr. Burgess's petition that it alleges do not meet the Rule 2(c) standard, the Brief contains little explanation for what is missing from the claims.  For most of the claims, Respondent relies on boilerplate language that simply recites the rule.  *See, e.g.*, Doc. 25 at 40 ("This claim is conclusory in nature, not supported by specific facts and fails to state a valid claim for relief.").  This Court should reject Respondent's attempt to short-circuit federal review of Mr. Burgess's federal constitutional claims.

## IV.  JURORS WERE EXPOSED TO AND CONSIDERED EXTRINSIC EVIDENCE IN VIOLATION OF THEIR DUTY TO REACH A VERDICT BASED SOLELY ON THE EVIDENCE ADDUCED IN THE COURTROOM.

Mr. Burgess's jury considered extraneous evidence that went to the only disputed question at the guilt phase: did Mr. Burgess intentionally kill the victim?  No evidence was admitted at trial regarding the design, condition, or operation of the Titan .25 that was used in the crime.  (Doc. 21 at 319.)  As a result of discussions during deliberations, the foreperson asked that the jury be re-instructed on the elements of murder and capital murder.  (Doc. 19-12 at 77–79.)  The trial

---

counsel could have called at trial.  Neither *Strickland* nor Rule 2 requires more. *Strickland*, 466 U.S. at 692.

judge reinstructed the jury.  (Doc. 19-12 at 80–91.)  A juror then asked whether a

"gun expert" could educate the jury on firearms, given that one juror was

"confused" about "the steps necessary to make a gun fire."  (Doc. 19-12 at 91.)

The judge denied the request, announcing that there would be no additional

testimony by a firearms expert or anyone else.  (Doc. 19-12 at 92.)

As alleged in the petition, the jury then conducted an improper experiment in

the jury room.  (Doc. 21 at 320–21.)  In the presence of all twelve jurors and

contrary to the trial judge's directive, Juror 12 assumed the role of an expert

witness and conducted an experiment with Exhibit 72 for the eleven other jurors.

He demonstrated how the pistol operated, including how the safety, slide, and

trigger functioned, to support his opinion that the pistol could not have discharged

unintentionally.  Jurors 7 and 10 also contributed their knowledge and opinions

about the operation of firearms, as did other unidentified jurors.  Following this

demonstration, the jury voted to convict.

Mr. Burgess has alleged that, as result of the improper experiment in the jury

room with the firearm used in the crime, his jury considered extraneous evidence

that went to the heart of the defense to the capital murder charge.  (Doc. 21 at 319–

23.)  As with all of his ineffective assistance of counsel claims, the state court

dismissed this claim on the merits, without even affording Mr. Burgess an

opportunity to prove his allegations.  *See Burgess*, 413 So. 3d at 101.

Under the Sixth Amendment, a criminal defendant has the right to confront and cross-examine those who testify against him, *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987), and a due process right to a jury verdict based solely on the evidence produced at trial. *Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965). "The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Id*. at 472 (footnote omitted). When a juror communicates extrinsic facts regarding the accused or the alleged crimes to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause.

Here, the jury was, in effect, presented with "secret" expert testimony about the workings of the firearm that was not subject to cross-examination or even counter-argument by counsel. Further, because some of the jurors relied upon their own knowledge of firearms—and individual jurors had different and varied experiences with firearms—they relied upon different bases of knowledge. Jurors' personal opinions regarding the operation of firearms were outside the scope of the evidence introduced at trial, and the jurors' opinions were ignorant of and/or in conflict with the facts concerning the design, condition and operation of the firearm.

In a single paragraph, Respondent argues that the CCA's ruling did not violate § 2254(d). (Doc. 25 at 78.) Respondent does not even cite *Ritchie* or *Turner* in its brief. Instead, it briefly cites *Tanner v. United States*, 483 U.S. 107 (1987) and *Warger v. Shauers*, 574 U.S. 40 (2014), to support its argument that the CCA's determination was not unreasonable under federal law. Neither case is on point. *Tanner* is about jurors who drank alcohol and slept during deliberations. *Tanner*, 483 U.S. at 113. *Warger* is about a juror who lied in voir dire about whether she could be fair. *Warger*, 574 U.S. at 43. Neither is about jurors who considered extrinsic evidence that the defendant had no opportunity to confront in a courtroom.

This Court should find that the state court's ruling was contrary to, and an unreasonable application of, clearly established federal law, and was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, it should schedule an evidentiary hearing to allow Mr. Burgess to present evidence establishing the jurors' improper consideration of extrinsic evidence.

## V.    MR. BURGESS'S ATTORNEY GREGORY BIGGS'S ACTUAL CONFLICT OF INTEREST VIOLATED MR. BURGESS'S RIGHT TO COUNSEL AND RIGHT TO A FAIR TRIAL.

During the entire time Gregory Biggs served as counsel for Mr. Burgess, he had an actual conflict of interest that was not disclosed to Mr. Burgess and that

adversely affected his representation. Specifically**,** Mr. Biggs served as a special prosecutor in a serious felony case pending in the same courthouse as Mr. Burgess's case. The same District Attorney who was prosecuting Mr. Burgess appointed Mr. Biggs to prosecute the other case. (Doc. 21 at 316–18.)

Mr. Biggs's employment as a special prosecutor was an actual conflict of interest. He was appointed by Mr. Burrell, who personally prosecuted Mr. Burgess. In addition, some of the same Decatur police officers were involved in both cases. Gary Walker was the lead investigator in both cases. Both Investigator Walker and Lieutenant Richard Crowell testified before the grand jury in the case Mr. Biggs was prosecuting, and Mr. Biggs called them as witnesses. In Mr. Burgess's case, these same witnesses testified for the State and were ostensibly subject to cross-examination by the defense team.

This actual conflict of interest adversely affected Mr. Biggs's representation of Mr. Burgess in specific ways that are detailed in the petition. (Doc. 21 at 317–18.)[19] Mr. Biggs's concurrent service as special prosecutor and as defense counsel

---

[19] Contrary to the state court's ruling, *Burgess*, 413 So. 3d at 93–94, the analysis does not change because Mr. Burgess did not allege that Mr. Biggs learned confidential information in his role as a special prosecutor or that he owed legal duties to law enforcement. *See State v. White*, 114 S.W.3d 469, 478 (Tenn. 2003) ("Even if cross-examination . . . would not involve the disclosure of confidences and secrets of the state or municipality, the desire to maintain a harmonious working relationship with these law enforcement officers could adversely affect the inquiring attorney's zeal in conducting such cross-examination") (quoting Tenn. Bd. Prof. Resp. Formal Ethics Op. 2002–F–146). Likewise, the circuit

for Mr. Burgess thus deprived Mr. Burgess of his rights to counsel, to the effective assistance of counsel, and to a fundamentally fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

The Court of Criminal Appeals denied this claim on the merits. *See Burgess*, 413 So. 3d at 91–94. Although Mr. Burgess alleged the state court's ruling was contrary to, and an unreasonable application of, clearly established federal law, and was based on an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d), Respondent's brief merely block-quoted the CCA's ruling, and simply stated that it did not violate § 2254(d) or conflict with Supreme Court law. (Doc. 25 at 73.)

The state court's ruling was both contrary to and unreasonable application of federal law. A petitioner establishes a violation of his Sixth Amendment right to the effective assistance of counsel by demonstrating that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Under Eleventh Circuit precedent, the petitioner "'must make a

---

court's finding that Mr. Burgess failed to plead a "nexus or substantial relationship" between Mr. Biggs's concurrent case does not defeat the sufficiency of his pleading. *Burgess*, 413 So. 3d at 93. An attorney's concurrent representation of competing interests creates a conflict of interest regardless of whether the two cases are related. *See, e.g.*, *Castillo v. Estelle*, 504 F.2d 1243, 1244 (5th Cir. 1974) (finding a conflict where a defense attorney represented a prosecution witness "in unrelated litigation"). In any event, Mr. Burgess *did* plead facts showing the cases were related: Mr. Biggs had been appointed by his trial adversary, and two Decatur police officers were involved in both cases.

factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.'" *Smith v. White*, 815 F.2d 1401, 1404–05 (11th Cir. 1987) (quoting *Barham v. United States*, 724 F.2d 1529, 1532 (11th Cir. 1984)).  The petitioner "need not demonstrate prejudice in order to obtain relief."  *Cuyler*, 446 U.S. at 349–50 (citation omitted); *see also Mickens v, Taylor*, 535 U.S. 162, 174 (2002) (holding that an actual conflict of interest that "adversely affected . . . counsel's performance" is grounds to void a conviction).

Because the state courts denied Mr. Burgess an opportunity to present evidence on this claim, the facts as alleged in his petition must be taken as true. *See Daniel*, 822 F.3d at 1261.  Taken as true, the facts alleged in both the state and federal court petitions warrant relief under § 2254(d).  One of Mr. Burgess's lawyers had an actual conflict, and he has alleged the numerous ways in which that conflict adversely affected his performance.  (Doc. 21 at 317–18.)  The state court's ruling denying Mr. Burgess an opportunity to present evidence in support of this claim was unreasonable and violated § 2254(d).  This Court should now set this claim for an evidentiary hearing, consider the claim de novo, and grant relief.

## VI.    THIS COURT IS NOT REQUIRED TO ACCORD ANY DEFERENCE TO THE COURT OF CRIMINAL APPEALS.

Mr. Burgess respectfully maintains that this Court is not required to accord deference to the decision of the Alabama Court of Criminal Appeals on issues it denied on the merits.  Instead, for the reasons stated in the petition, the Court should decide the merits of Mr. Burgess's claims *de novo*.  (Doc. 21 at 88–90) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)).  Respondent does not address this argument in its brief, but has a short response in the answer, arguing that *Loper Bright* was a statutory, not constitutional, case and did not explicitly overrule the holding of *Williams v. Taylor*, 529 U.S. at 362.  (Doc. 23 at 8–10.)

Mr. Burgess acknowledged that *Loper Bright*'s overruling of *Williams v. Taylor* was implicit, and he explained in his petition that this Court can and should avoid the necessity of adjudicating the constitutionality of § 2254(d)'s deference requirement by construing the statute in the manner prescribed by Justice Stevens's opinion in *Williams v. Taylor*, 529 U.S. at 386: "Section 2254(d) requires us to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails."  This approach is advised by the canon of constitutional avoidance.  *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("'[I]t is a cardinal principle' of statutory

85

interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'").

The fact that *Loper Bright*'s overruling of *Williams v. Taylor* was implicit does not give the opinion any less precedential force. In *Loper Bright* itself, the Court acknowledged that, in requiring deference, *Chevron* violated one of the oldest and most fundamental principles in U.S. constitutional law without even noticing or mentioning the issue at the time or in 70 subsequent Supreme Court cases. *See Loper Bright Enterprises*, 603 U.S. at 396, 397 (noting that *Chevron, USA., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984), "triggered a marked departure from the traditional approach" without "acknowledging any doctrinal shift"). *Loper Bright* concluded, however, that *Chevron* and its progeny represented a fundamentally mistaken interpretation of the standard of review in the Administrative Procedure Act ("APA") and Article III of the Constitution, and that the mistake had to be rectified by overturning *Chevron. See Loper Bright Enterprises*, 603 U.S. at 406–07. *Loper Bright* thus reveals both why *Williams v. Taylor*'s interpretation of § 2254(d) and the Supreme Court decisions following that interpretation are identically mistaken and that the only appropriate course of action is to cure the mistake by declining to apply *Williams v. Taylor*'s interpretation.

Moreover, Respondent suggests that because *Loper Bright* resolved a statutory question—how to interpret § 706 of the Administrative Procedure Act—it does not bear on the constitutionality of § 2254.  Both APA § 706 and § 2254(d) require interpretation.  (Doc. 23 at 9.)  As recounted in *Loper Bright*, § 706 of the APA requires federal courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . *not in accordance with law*. § 706(2)(A)."  *Loper Bright Enterprises*, 603 U.S. at 391 (emphasis added). Likewise, between them, §§ 2241(c)(3), 2254(a) and 2254(d) require federal courts to hold unlawful and grant habeas relief setting aside state-court judgments that are "*contrary to . . . clearly established Federal law*, as determined by the Supreme Court of the United States."  § 2254(d) (emphasis added).  Chief Justice Roberts' opinion for the Court in *Loper Bright* thus models for federal courts how they should interpret the parallel language of both statutes.

Ultimately, the *Loper Bright* Court interpreted the words of the statute at issue in light of Article III as interpreted ever since *Marbury v. Madison*, 5 U.S. 137 (1803):

> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that [federal] courts decide legal questions by applying their own judgment.

*Loper Bright Enterprises*, 603 U.S. at 391–92.  Likewise, the habeas statutes codify for cases challenging custody alleged to be in violation of the U.S.

Constitution the same unremarkable, yet elemental proposition: federal courts decide legal questions by applying their own judgment.

Finally, as the petition explains, this is an open question. (Doc. 21 at 89) ("The United States Supreme Court has never ruled on the constitutionality of the deference requirement."). Specifically, the Supreme Court has never addressed the constitutionality of its interpretation of § 2254(d) to require deference to state court determinations of law. There is therefore no barrier to a lower federal court considering the Article III challenge. The question is open. Lower federal courts are obliged to answer it. And *Loper Bright* makes clear both how federal courts should address the question and what the right answer is: AEDPA deference is unconstitutional.

## VII.   THE ALABAMA DEATH PENALTY STATUTE AND THE PROCEDURE RESULTING IN MR. BURGESS'S SENTENCE OF DEATH VIOLATE THE UNITED STATES CONSTITUTION.

Mr. Burgess respectfully maintains that his death sentence violates *Ring v. Arizona*, 536 U.S. 584 (2002), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (*See* Doc. 21 at 359–62.) Respondent's brief refers to the CCA's citation to *Ex parte Bohannon*, 222 So. 3d 525 (Ala. 2016), and asserts that Mr. Burgess's arguments are without merit under § 2254(d). (Doc. 25 at 98–100.) While *Bohannon* is a state court decision,

Mr. Burgess acknowledges that the Eleventh Circuit has rejected similar arguments in other cases.  *See*, *e.g.*, *Miller v. Comm'r, Ala. Dept. of Corr.*, 826 Fed. Appx. 743, 749–50 (11th Cir. 2020).  However, he respectfully maintains that those cases were decided incorrectly and that the state court's decision in this case constitutes an unreasonable application of clearly established federal law, for the reasons set forth in his petition.  (*See* Doc. 21 at 359–62.)  Therefore, Mr. Burgess respectfully requests that this Court vacate his death sentence.

## VIII.  MR. BURGESS IS ENTITLED TO RELIEF ON ALL HIS CLAIMS.

Respondent's defense of the Court of Criminal Appeals's rulings on most of his claims consists primarily of block-quoting the CCA's ruling and reciting boilerplate, conclusory language that "Burgess has not shown and cannot show that the ACCA's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts." (*See, e.g.*, Doc. 25 at 58–59, 59–61, 66–67.)

Mr. Burgess does not repeat in this Reply Brief the allegations recited in his exhaustive federal habeas petition.  (Doc. 21.)  Rather, he incorporates the petition by reference, and respectfully urges that he is entitled to an evidentiary hearing, and then habeas relief, on the claims pleaded therein for the reasons stated in his petition.

## CONCLUSION

Mr. Burgess respectfully requests that this Court schedule an evidentiary hearing on his federal habeas claims and grant a writ of habeas corpus with respect to all claims.

Respectfully submitted,

s/ *Ty Alper*
Ty Alper, #ASB-3045-T68A
Elisabeth Semel (admitted *pro hac vice*)
U.C. Berkeley School of Law
346 North Addition
Berkeley, CA 94720-7200
Tel: (510) 643-7849
talper@law.berkeley.edu
esemel@law.berkeley.edu

*Counsel for Petitioner Willie Burgess, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notice of such filing to all registered CM/ECF users.

*/s/ Ty Alper*
Ty Alper